LORAN S. CLARK v. MARGARET J. CLARK

No. 83

(Filed 7 October 1980)

1. **Divorce and Alimony § 16.9– amount of alimony – finding that budgeted expenses not "necessary"**

    The trial court's finding in an alimony action that all of the items in a budget submitted by defendant wife were not "needed or necessary" items did not show that the court applied an improper standard in determining the amount of alimony for the wife of a wealthy man, since it was clear that the court considered what expenses were necessary to maintain the standard of living of a woman who was married to a man of substantial means rather than what was necessary to maintain bare subsistence.

---

Clark v. Clark

**2. Divorce and Alimony § 16.9– amount of alimony – income tax consequences**

Periodic payments received by a wife, which constitute a discharge of a legal obligation which the husband has to provide in the way of alimony by virtue of a court decree entered after 1 March 1954, are taxable to the wife and deductible by the husband, and though G.S. 50-16.5(a) does not include the income tax consequences of an award of alimony as a factor to be weighed in the balance in determining the proper amount of the award, such would be a proper consideration in making that determination.

**3. Divorce and Alimony § 16.9– amount of alimony – income tax consequences**

An award of alimony to defendant wife was not erroneous on the ground that the trial judge failed to consider the income tax consequences of the award where defendant offered evidence of her potential income tax liability at trial, and the record did not indicate that this liability was not one of the factors taken into consideration in the determination of the amount of alimony to which defendant was entitled.

**4. Divorce and Alimony § 16.9– alimony order – failure to provide for possession of homeplace**

The trial court did not abuse its discretion in failing to make some provision in its alimony order for possession of the parties' homeplace.

**5. Divorce and Alimony § 16.5– alimony action – estimate of future value of stock – incompetency**

The trial court in an alimony action properly excluded a handwritten statement by plaintiff which forecast the value of his interest in a corporation, since the statement, which estimated that the value of plaintiff's stock would increase annually by the sum of $100,000 after May 1976, extended indefinitely into the future and was therefore incompetent, and since no basis for the valuation was established.

**6. Divorce and Alimony § 18.16– alimony action – showing required for award of counsel fees**

For an award of counsel fees to be made in an alimony case, it must be determined that the spouse is entitled to the relief demanded, that the spouse is a dependent spouse, and that the dependent spouse is without sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof.

**7. Divorce and Alimony § 18.16– alimony action – amount of counsel fees – determining factors**

In making its determination of the proper amount of counsel fees which are to be awarded a dependent spouse in an alimony action, the trial court must consider the separate estates of the parties, the nature and worth of the legal services rendered, the magnitude of the task imposed upon counsel, and the parties' respective conditions and financial circumstances.

**8. Divorce and Alimony § 18.16– alimony action – amount of counsel fees – abuse of discretion**

The trial court's award of only $500 in legal fees to defendant wife in an

Clark v. Clark

alimony action constituted an abuse of discretion, though defendant had a separate estate of approximately $87,000, since plaintiff's net worth was approximately $650,000, including a savings account of $75,000; defendant was not under an obligation to meet the expenses of the litigation through the unreasonable depletion of her separate estate, since it was considerably smaller than that of the supporting spouse; and there was no indication in the record that the trial court considered the nature and worth of the services rendered by defense counsel or the magnitude of the task imposed upon them.

Justice BROCK took no part in the consideration or determination of this case.

APPEAL by defendant from the decision of the Court of Appeals reported in 44 N.C. App. 649, 262 S.E. 2d 659 (1980), affirming in part and vacating in part the judgment of *Pearson, J.*, entered 10 November 1978 in DURHAM County District Court.

Plaintiff and defendant were married on 16 January 1954. Following the death of his first wife, plaintiff moved from Rochester, New York, to Durham, North Carolina, where he built a motel, utilizing approximately $100,000 of his own funds which he had acquired in other business ventures. The motel opened for business in 1952. After defendant married plaintiff, she began working at the motel as a salaried employee. She remained in that capacity for approximately one year.

In 1962, plaintiff sold the motel in Durham, and the couple moved to Puerto Rico where plaintiff engaged in manufacturing golf gloves. While defendant assisted her husband by entertaining and engaging in other business-related activities, she was not again employed outside of the home during the course of her marriage to plaintiff.

Plaintiff remained in the manufacturing business for six years, selling his interest in the concern in 1968. Thereupon, he and defendant returned to Durham. After his return to North Carolina, plaintiff was approached for advice concerning the operation of the Hilton Inn located in Durham.

By May of 1969, the Hilton Inn was in a precarious financial condition. Over the course of the preceding thirty-eight months of operation, the business had accumulated losses amounting to $524,000.00. After reviewing the situation, plaintiff recom-

mended that the business seek protection from its creditors under Chapter Ten of the Bankruptcy Act so that it could reorganize its operations. On 10 September 1969, the United States District Court for the Middle District of North Carolina granted the motel's parent company, Landmark Inns of Durham, such protection. The court also entered an order appointing Richard M. Hutson II to serve as trustee in bankruptcy. The trustee, in turn, employed plaintiff as the manager of the motel. In the ensuing forty-two months, the company was able to show a profit of $421,000.00. On 16 May 1973, the company's protection under the Bankruptcy Act terminated. At that time, plaintiff purchased 101,000 shares of stock, controlling interest, in the corporation for one dollar per share. Plaintiff serves as chairman of the board of directors of the corporation, now known as Landmark Inns of Durham, Inc., as well as its secretary and treasurer. In addition, he serves as chief operating officer. His salary from the corporation has increased from $52,000 in 1974 to $79,500 in 1978. Plaintiff has also engaged in a partnership with two other persons in the operation of a motel located in Myrtle Beach, South Carolina, known as the Four Seasons Motor Inn.

Throughout the course of their marriage, plaintiff and defendant enjoyed a high standard of living. They lived in a house in Durham whose purchase price in 1974 was $75,000.00. The couple accumulated numerous items of personal property, including silverware, porcelain and antique furniture. They travelled extensively, counting among their journeys a seven-month tour around the world and several Carribean cruises.

On 6 December 1976, plaintiff moved out of the couple's home on Wilshire Drive in Durham. On 29 March 1977, he filed suit against defendant, seeking a divorce from bed and board, alleging that "the mental abuse associated with the defendant's attitude toward the plaintiff has rendered the plaintiff's continued life with the defendant both intolerable and burdensome." Defendant answered, denying the allegations of the complaint, and counterclaimed for alimony *pendente lite*, permanent alimony without divorce and counsel fees, alleging that plaintiff had abandoned her without justification and had willfully failed to provide her with necessary subsistence.

In an order entered 19 May 1977, the District Court, Moore, J., found that the parties had been lawfully married on 16 January 1954; that no children had been born of the marriage; that plaintiff was the supporting spouse; and that defendant was the dependent spouse. Defendant was awarded alimony *pendente lite* in the amount of $1,400 per month, continued possession of the parties' house, and $600 in counsel fees. Defendant was ordered to make the mortgage payments on the dwelling, as well as to pay all insurance premiums and *ad valorem* taxes thereon. Defendant had the further obligation to pay the costs of ordinary repairs to the house.

Before the hearing on the merits, the parties stipulated that plaintiff would withdraw his complaint for divorce from bed and board. They further stipulated that plaintiff was the supporting spouse; that defendant was the dependent spouse; and that the only issue would be the amount and type of permanent alimony. Any award of counsel fees to defendant was to be in the discretion of the trial judge.

The matter came on for hearing before Judge Pearson on 18 October 1978. Based upon the testimony of the parties as well as exhibits offered by each, the trial judge entered an order on 10 November 1978 in which he made findings of fact and conclusions of law. The court concluded as a matter of law that defendant was entitled "to live in a lifestyle to which she had become accustomed during the marriage and up to and including the date of the separation. . . ." Defendant was awarded permanent alimony in the amount of $1,500 per month as well as counsel fees in the amount of $500.00. The court further directed the parties to divide the personal property located in their homeplace in a manner which was mutually agreed upon by the couple.

The Court of Appeals, in an opinion written by Judge Parker, concurred in by Judge Martin (Robert M.), affirmed that portion of the district court's judgment which awarded defendant permanent alimony and counsel fees. The Court of Appeals vacated that portion of the judgment which directed the couple to divide their personal property. Judge Erwin dissented, concluding that the trial court had abused its discretion

in making the award of permanent alimony in the amount of $1,500, and by not making any provision for the continued payment of the mortgage insurance, *ad valorem* taxes, and ordinary or major repairs of the couple's house.

Defendant appealed pursuant to G.S. § 7A-30(2).

*Maxwell, Freeman, Beason and Lambe, P.A., by James B. Maxwell, for plaintiff-appellee.*

*Haywood, Denny and Miller, by Egbert L. Haywood, David L. Lomas and George W. Miller, for defendant-appellant.*

BRITT, Justice.

Defendant first contends that the trial court abused its discretion in the award of permanent alimony in the amount of $1,500 per month on the grounds that it failed to consider the income tax consequences of the award; that it applied an incorrect standard in evaluating her expenses in light of her accustomed standard of living; and that it failed to make provision for the disposition of the parties' homeplace. We agree with the Court of Appeals that there was no abuse of discretion on these points.

While defendant has presented three arguments with respect to this contention, the starting point of our discussion as to each must be that which is provided by G.S. § 50-16.5(a) which dictates: "Alimony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the particular case." In applying the statute to particular factual situations, our cases have consistently embodied the rule that while the factors which are delineated in the statute must be considered by the judge in determining the amount of alimony to be awarded in a given case, his determination of the proper amount may not be disturbed on appeal absent a clear showing of abuse of discretion. *E.g., Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975); *Schloss v. Schloss,* 273 N.C. 266, 160 S.E. 2d 5 (1968); *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966). By the exercise of

his discretion, a judge ought not to arrogate unto himself arbitrary power to be used in such a manner so as to gratify his personal passions or partialities. *Hensley v. McDowell Furniture Co.*, 164 N.C. 148, 80 S.E. 154 (1913). Discretion is properly applied in those instances where, upon deliberation and with firmness, a judge deems its use necessary to the proper execution of justice. *See Jarrett v. High Point Trunk & Bag Co.*, 142 N.C. 466, 55 S.E. 338 (1906). A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason. *See Martin v. Martin*, 263 N.C. 86, 138 S.E. 2d 801 (1964). It is with these principles in mind that we now turn our attention to a consideration of defendant's challenge to the award of permanent alimony which was made by Judge Pearson.

[1] Defendant initially argues that the trial court erred by applying an incorrect standard in formulating its award of permanent alimony. We disagree.

Prior to their separation on 6 December 1976, plaintiff and defendant had established and maintained a high standard of living. The couple lived in a house in an exclusive section of Durham whose cost at the time of its purchase in 1974 was $75,000.00. Throughout their marriage, the parties had traveled extensively, including trips to Canada, the Carribean Sea and Europe, as well as a trip around the world. The couple ate and dressed well. Except for the time they lived in Puerto Rico while plaintiff manufactured golf gloves, the parties maintained a membership in the Hope Valley Country Club in Durham. Throughout their marriage, the couple worked to accumulate numerous items of personal property, including antiques, porcelain and silverware. The couple consistently enjoyed this lifestyle throughout the course of their marriage.

Defendant worked outside of the home only for a short while early in the marriage and thereafter supported her husband in his business endeavors in other ways. Upon defendant's withdrawal from the work force, the parties looked to the income of plaintiff to maintain them in the style to which they had become accustomed. The record does not reflect plaintiff's income throughout the course of the marriage. However, it does

indicate rather substantial growth in his income in the latter years of the parties' marital relationship. Plaintiff's taxable income in the years 1969 through 1973 fluctuated between a high of $33,986.69 in 1972 and a low of $10,594.42 in 1970. It was during this period that plaintiff worked with the trustee in bankruptcy to put the Hilton Inn on a sound financial footing. Plaintiff's association with Landmark Inns of Durham, Inc., commenced in 1974. His income thereupon grew from $52,000 in 1974 to $72,000 in 1976, the last year that the parties lived together as husband and wife. Other sources of income brought plaintiff's income for 1976 to a total of $95,756.17.

At the hearing held for the purpose of determining the amount of permanent alimony which was to be awarded, the trial court heard evidence not only of the income and lifestyle of the parties but also of their respective separate estates. Based upon this evidence, the trial court found as a fact that plaintiff's net worth in 1975 was approximately $650,000.00. His separate estate included several parcels of real estate, as well as two-third's ownership of Landmark Inns of Durham, Inc. By March 1978, plaintiff had built a savings account up to a balance of $75,000.00. Defendant's net worth consisted of stock, bonds, savings accounts, and a one-half interest in the Wilshire Drive property. Taken together, these items gave defendant assets amounting to $87,000.00.

The trial judge was presented with an annual budget which projected expenses for defendant in the amount of $23,200.57. In his order, Judge Pearson concluded that "... the Court does not feel that all of the items on the budget submitted by the wife, Margaret J. Clark, on her Exhibit 1, are needed or necessary items."[1] While we do not consider it proper for us to speculate as to the items which Judge Pearson had in mind in making this observation, an examination of the proposed budget in

---

[1]In seeking an award of alimony *pendente lite*, defendant submitted annual estimated expenses to the court amounting to $23,500.00. In his order granting defendant alimony *pendente lite* in the amount of $1,400 monthly, Judge Moore observed that "[T]he Court considers the $23,500.00 as a somewhat liberal expense account and that some of the expenses may not be economically calculated in determining pure subsistence."

light of other evidence which was adduced at the hearing refutes defendant's contention that the order manifests an abuse of discretion.

While the amount of permanent alimony that is to be awarded is basically a question of fairness and justice to all concerned parties, *Beall v. Beall*, 290 N.C. 669, 228 S.E. 2d 407 (1976); *Sayland v. Sayland, supra,* the precise amount of the award in a given case is subject to the principle that the wife of a wealthy man should be awarded an amount commensurate with the normal standard of living of a man of like financial resources. *Schloss v. Schloss, supra.* Before this court, defendant characterized the use of the term "needed or necessary" as an abuse of discretion manifesting an application of an improper standard. We disagree.

Viewed within the context of the findings of fact concerning the parties' accustomed standard of living, the court's use of the phrase is not inconsistent with the standard enunciated by *Schloss v. Schloss, supra.* It is manifest that the court considered what expenses were necessary to maintain the standard of living of a woman who was married to a man of substantial means, rather than in terms of what was necessary to maintain bare subsistence. There is no rule of law which would serve to require a trial judge to accept without question a party's assertion of what would constitute an award of alimony which was adequate to maintain a particular standard of living. *See Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980).[2] To so require would be to make a mockery of the standard which defendant properly asserts as controlling in the present case. Indeed, it is incumbent upon the court, in making a determina-

---

[2]Speaking for the court in *Williams v. Williams*, Justice Carlton observed that
... the trial court must then determine whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the standard of living of the spouse seeking alimony in the manner to which the spouse became accustomed during the last several years prior to separation. This would entail considering what reasonable expenses the party seeking alimony has, bearing in mind the family unit's accustomed standard of living.

299 N.C. at 183, 261 S.E. 2d at 856.

tion of the award of alimony, to weigh the evidence so as to make an independent determination of the proper amount.

Furthermore, we note that with the entry of judgment in the present case awarding defendant permanent alimony, she was no longer saddled with certain obligations imposed on her by the order granting her alimony *pendente lite*. That order imposed upon her the obligation of bearing the burdens normally incident to home ownership in regard to the Wilshire Drive property. The budget which defendant submitted to Judge Pearson called for the expenditure of approximately $8,000 in discharge of the mortgage payments and the maintenance of the house in an adequate state of repair, as well as the payment of property taxes and insurance premiums.

As a general rule, the award of permanent alimony terminates an order of alimony *pendente lite*. *Rickert v. Rickert*, 282 N.C. 373, 193 S.E. 2d 79 (1972). The order of temporary alimony had granted defendant the sum of $1,400 per month, $100 per month less than the amount awarded as permanent alimony by Judge Pearson. Yet, with the smaller sum which was available to her, defendant met the obligations of home ownership as well as increased the balance in her savings account by approximately $9,000.00. Therefore, upon the record which is before us, we are unable to agree with defendant that the trial court applied the wrong standard in determining the amount of her alimony award.

Similarly, we do not find that the trial judge committed error in failing to consider the income tax consequences of the award of permanent alimony.

[2] Periodic payments received by a wife, which constitute a discharge of a legal obligation which the husband has to provide in the way of alimony by virtue of a court decree entered after March 1, 1954, are taxable to the wife and deductible by the husband. I.R.C. § 71 (1954). While it is true that the express language of G.S. § 50-16.5(a) does not include the income tax consequences of an award of alimony as a factor to be weighed in the balance in determining the proper amount of the award, we are of the opinion that such would be a proper consideration

in making that determination. While the award to defendant amounts to $18,000 annually, the sum of money which is available to her for the maintenance of her standard of living will be considerably less than that because the payments which she receives under the decree entered by Judge Pearson are taxable to her.

The statute is clearly broad enough to authorize the courts to consider the tax aspects of an award of permanent alimony by providing that "[A]limony shall be in such amount as the circumstances render necessary, having due regard to the estates, ... and other facts of the particular case." G.S. § 50-16.5(a) (1976). To ignore the income tax consequences of an award of permanent alimony would be an unreasonable application of the mandate of the statute, as well as a violation of the principle laid down by *Beall v. Beall, supra,* and *Sayland v. Sayland, supra,* that the amount of alimony that is to be awarded is basically a question of fairness and justice to all parties. We do not mean to suggest that tax consequences are in any way preeminent in the determination of the amount of the award. Nor do we mean to suggest that a trial court must compute the amount of the award in such a manner as to result in the least amount of tax liability for either the supporting spouse or the dependent spouse. We simply hold that the tax consequence of an award of alimony is but one consideration among several that are properly weighed by a trial court in determining the amount of the award. It is clear that to disregard the effect of taxation on such an award would be to flirt with an unrealistic, and potentially unjust, result. The great weight of authority in other jurisdictions supports our position. *E.g., Wetzel v. Wetzel,* 35 Wis. 2d 103, 150 N.W. 2d 482 (1967); *see generally* Annot., 51 A.L.R. 3d 461 (1973).

[3] While it is true that the trial court made no specific finding of fact concerning the income tax implications of the award, we conclude that our holding as to this argument does not require reversal. Defendant offered evidence of her potential income tax liability at trial. The record does not indicate, nor has defendant demonstrated on appeal, that this liability was not one of the factors taken into consideration in the determination of the amount of alimony to which defendant was entitled. The facts

which Judge Pearson did find support his conclusions of law and the judgment entered insofar as the award of alimony is concerned. That there was no specific finding concerning the tax consequences of the award does not amount to reversible error under these circumstances.

[4] Nor do we agree with the defendant's contention that the trial court erred in failing to make adequate provisions in its judgment with respect to the status of the parties' homeplace in Durham. In his order, Judge Pearson expressly stated

> That no division or writ of possession as to the homeplace of the parties located at 1918 Wilshire Drive in Durham, North Carolina should be made by this court.

The order granting defendant alimony *pendente lite* also granted her possession of the property located at 1918 Wilshire Drive in Durham. That order also imposed upon her the obligations of home ownership in regard to that property. As we have noted earlier, the order granting defendant permanent alimony superseded the prior order. *See Rickert v. Rickert, supra.* Defendant was no longer obligated by court order to make payments on and maintain the homeplace. Any such obligation which remains is now grounded in considerations of contract and ownership which are peripheral to this litigation. While a trial court has the authority to order payment of alimony by possession of real property, G.S. § 50-16.7(a) (1976), as well as the power to issue a writ of possession when necessary, G.S. § 50-17 (1976), the pertinent statutory provisions do not require it to do so.[3] We agree with the decision of the Court of Appeals in this respect.[4]

---

[3]While Judge Pearson *could* have awarded the homeplace to defendant as part of the award, defendant cannot assert that she had an automatic right to possession of the house or that such possession was an inherent aspect of her standard of living.

[4]We specifically reject plaintiff's contention that defendant's argument ought to be rejected out of hand because she did not specifically ask for the award of possession in her counterclaim. Clearly, her prayer "[F]or such other and further relief as the defendant may be entitled and which the court deems just and proper" is broad enough to include such an award. *See State Highway Com'n v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248 (1967).

Clark v. Clark

[5] By her second assignment of error, defendant contends that the trial court erred by excluding from evidence defendant's Exhibit 14. The exhibit is a handwritten statement by plaintiff in which he estimated the value of his controlling interest in Landmark Inns of Durham, Inc., to be $202,000 as of 1976. The document went on to forecast the value of the stock to increase annually by the sum of $100,000 after May 1976. We agree with the Court of Appeals that there was no error.

The value of property within a reasonable time before or after the commencement of an action seeking an award of permanent alimony is a proper subject of inquiry for a trial court which is hearing such a case. Otherwise, an accurate assessment of the value of the parties' separate estates and, therefore, a fair determination of ability to provide and need to receive such an award would be difficult, if not completely impossible. In the present case, defendant sought to introduce a valuation of stock in a corporation which had been prepared by plaintiff. Such a valuation of personal property may be admitted as an admission. *See Daniels v. Fowler*, 123 N.C. 35, 31 S.E. 598 (1898); *compare Everett v. Gainer*, 269 N.C. 528, 153 S.E. 2d 90 (1967) (lack or amount of internal revenue stamps on a deed is evidence of consideration paid). However, a valuation that extends into the remote future is incompetent. *Tennessee Carolina Transportation Inc. v. Strick Corp.*, 283 N.C. 423, 196 S.E. 2d 711 (1973). The exhibit in question was prepared some time prior to May 1976 and extends indefinitely into the future. Furthermore, no basis for that valuation is established in the record which is before us. *See Harrelson v. Gooden*, 229 N.C. 654, 50 S.E. 2d 901 (1948); *Nantahala Power & Light Co. v. Rogers*, 207 N.C. 751, 178 S.E. 575 (1935).

By her third assignment of error, defendant contends that the trial court abused its discretion in awarding defendant only $500 in counsel fees. This assignment has merit and we hold that the Court of Appeals erred in overruling it.

[6] In order to receive an award of counsel fees in an alimony case, it must be determined that the spouse is entitled to the relief demanded; that the spouse is a dependent spouse; and that the dependent spouse is without sufficient means whereon

to subsist during the prosecution of the suit, and defray the necessary expenses thereof. *Rickert v. Rickert, supra; see generally, Hudson v. Hudson,* 299 N.C. 465, 263 S.E. 2d 719 (1980). Whether these requirements have been met is a question of law that is reviewable on appeal, and if counsel fees are properly awarded, the amount of the award rests within the sound discretion of the trial judge and is reviewable on appeal only for an abuse of discretion. *Hudson v. Hudson, supra; Rickert v. Rickert, supra.* The guiding principle behind the allowance of counsel fees is to enable the dependent spouse, as litigant, to meet the supporting spouse, as litigant, on substantially even terms by making it possible for the dependent spouse to employ adequate and suitable legal representation. *Hudson v. Hudson, supra; Williams v. Williams, supra; Rickert v. Rickert, supra; Schloss v. Schloss, supra.*

[7] In making its determination of the proper amount of counsel fees which are to be awarded a dependent spouse as litigant, the trial court ought not to cease its inquiry with a determination of the separate estates of the parties which are available to defray the costs of litigation. *See Stanback v. Stanback,* 270 N.C. 497, 155 S.E. 2d 221 (1967). The trial court is under an obligation to conduct a broad inquiry in this regard, considering as relevant factors the nature and worth of the services rendered, the magnitude of the task imposed upon counsel, and reasonable consideration for the parties' respective conditions and financial circumstances. *Stanback v. Stanback, supra; Stadiem v. Stadiem,* 230 N.C. 318, 52 S.E. 2d 899 (1949). On appeal, the question posed is not whether the award was larger or smaller than expected, or whether it was of the customary amount. Instead, the issue becomes whether, upon consideration of all the circumstances under which it was made, it was so unreasonable as to constitute an abuse of discretion. *Stanback v. Stanback, supra; Stadiem v. Stadiem, supra.*

[8] In the present case, the disparity of financial resources which are available to the parties to defray the expenses of litigation is apparent. The record reflects that plaintiff's net worth in 1975 was approximately $650,000.00. By 1978, plaintiff had built a savings account whose balance of $75,000 approached the value of defendant's entire separate estate of

$87,000.00. To award only $500 in counsel fees to defendant in light of this substantial difference in worth manifests an abuse of discretion. While defendant is an individual of some means by contemporary standards, the law does not impose upon her the obligation to deplete her separate estate to meet the financial burdens imposed by this litigation. *Cf., Williams v. Williams,* 299 N.C. at 183-84, 261 S.E. 2d at 856. (A spouse who has a substantial separate estate is not prevented from being found to be actually, substantially dependent upon the supporting spouse where the depletion of the separate estate could maintain the accustomed standard of living.)

We think that the rationale behind our decision in *Williams v. Williams, supra,* on the question of alimony is appropriately applied to the question of counsel fees. It is true that in *Williams* we disallowed counsel fees, but in that case the separate estate of the dependent spouse was almost equal to that of the supporting spouse. It would be contrary to what we perceive to be the intent of the legislature to require a dependent spouse to meet the expenses of litigation through the unreasonable depletion of her separate estate where her separate estate is considerably smaller than that of the supporting spouse as is the case here. Furthermore, it flies in the face of common sense and fair play to so require. While in the abstract, it would seem that defendant has ample resources with which to do battle in the courts, close analysis suggests that such is the case only through unreasonable depletion of her relatively small resources.

We observe that this litigation has been underway since 1977. While the record suggests that there was extensive discovery and other activity conducted in the course of the litigation, there is no suggestion that the trial court considered the nature and worth of the services rendered by defense counsel or the magnitude of the task imposed upon them. Accordingly, on the question of counsel fees, we reverse the decision of the Court of Appeals, we vacate the award of counsel fees and remand the case to the Court of Appeals for remand to the district court for further proceedings not inconsistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

Justice BROCK took no part in the consideration or decision of this case.