HERBERT WILLIAM KENNEDY, JR. v. ELIZABETH ROSS STARR

No. 8218SC418

(Filed 17 May 1983)

1. **Rules of Civil Procedure § 60.2— default judgment—constructive service on defendant—no mistake, inadvertence, surprise or excusable neglect**

A default judgment entered after constructive service was obtained on defendant through the Commissioner of Motor Vehicles could not be set aside under G.S. 1A-1, Rule 60(b)(1) on the ground that it was the result of "mistake, inadvertence, surprise, or excusable neglect."

2. **Rules of Civil Procedure § 60.2— default judgment—refusal to set aside for other reason justifying relief—no abuse of discretion**

The trial court did not abuse its discretion in refusing to set aside a default judgment under G.S. 1A-1, Rule 60(b)(6) for "any other reason justifying relief from the operation of the judgment" in an automobile accident case in which constructive service was obtained on defendant through the Commissioner of Motor Vehicles, although plaintiff's counsel had negotiated with defendant's automobile liability insurer and failed to notify the insurer of the suit.

Judge WHICHARD concurring.

APPEAL by defendant from *Kivett, Judge.* Order entered 18 February 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 8 March 1983.

This is an appeal from an order denying defendant's motion, purportedly made pursuant to N.C. Gen. Stat. § 1A-1, Rules 60(b)(1) and 60(b)(6), to set aside a "default judgment and entries of default entered herein."

The allegations contained in defendant's motion are summarized as follows. Defendant was never actually served with process. She did not receive the mailings from the Commissioner of Motor Vehicles and had not had actual knowledge of the filing of this action. She had at no time received any communication from plaintiff, his counsel, or any other source, "regarding the pendency of this civil action or any proceedings that may have taken place herein."

Plaintiff, through counsel, had been in contact with defendant's insurance carrier. Representatives of defendant's carrier "made multiple requests for information to counsel for the plaintiff soon after the accident which were not replied to." Plaintiff,

through counsel, had "proceeded with this civil action without at any time notifying said insurance carrier that a civil action had been initiated or that the Defendant's whereabouts could not be determined."

This action was commenced on 19 November 1979, two years and ten months after the accident occurred. The first notice of the action to defendant's carrier was by letter of 30 June 1981 from plaintiff's counsel enclosing a copy of the default judgment. This was "long after the carrier's file on the accident had been closed and destroyed." Counsel for plaintiff did not communicate with any representative of the carrier with regard to the accident from approximately the end of 1977 until the 30 June 1981 letter enclosing the default judgment.

Finally, defendant alleges that she has a meritorious defense in that the accident was caused, not by her negligence, but by "the [icy] conditions then present and the location of Plaintiff's car in the left lane of [the] highway."

In support of her motion the defendant filed her own affidavit, an affidavit of a claims representative from her liability insurance carrier, and an affidavit of her father. These affidavits tended to support the allegations in the motion.

After a hearing, the trial judge made the following findings:

1. On January 3, 1977, the plaintiff was operating his automobile in a northerly direction of N.C. Highway 68 approximately 2.8 miles north of the city limits of High Point, North Carolina. After the plaintiff stopped his vehicle for traffic ahead of him, a vehicle operated by the defendant failed to stop and collided with the rear of the plaintiff's vehicle, resulting in personal injuries being suffered by the plaintiff.

2. The defendant reported the accident to her liability insurance company. Thereafter, both the plaintiff and his attorney discussed the plaintiff's claim for personal injuries with the Claims Department of the defendant's liability insurance company. However, the claim was not resolved.

3. The plaintiff filed this action for damages for personal injuries on November 19, 1979. The Sheriff of Guilford County was unable to serve the original summons, noting that he

was unable to locate the defendant and that the defendant had moved, leaving no forwarding address. The plaintiff procured the issuance of an alias summons on December 5, 1979. The Sheriff of Guilford County returned this summons unserved, with the notation that the defendant had moved to Alexandria, Virginia.

4. The defendant resided in Fairfax, Virginia from July, 1978 to March 1980, when she moved temporarily to Springfield, Virginia. The plaintiff attempted service of process of pluries summons dated December 18, 1979 and December 28, 1979, by certified mail, addressed to the defendant's residence in Fairfax, Virginia. The certified letters were not delivered, and [were] returned as unclaimed. On January 22, 1980, the plaintiff obtained issuance of a pluries summons directed to the defendant at her Fairfax, Virginia address, and the plaintiff placed such process in the hands of the Sheriff of Fairfax County, Virginia for service. Said pluries summons was returned by the Sheriff of Fairfax County on February 27, 1980, bearing the notation "Elizabeth Ross Starr seems to be avoiding service. Is vacating house, and will not reply to numerous messages left."

5. The plaintiff obtained the issuance of another pluries summons on March 7, 1980, and served this process upon the Commissioner of Motor Vehicles, the process agent for the defendant, pursuant to N.C.G.S. § 1-105.1. The registered letter sent by the North Carolina Department of Motor Vehicles to defendant's Fairfax, Virginia address was returned unclaimed, but showed a forwarding address at 1403 Gerard Street, Rockville, Maryland 20850. On May 19, 1980, the plaintiff caused to be issued another pluries summons and caused said summons to be served upon the North Carolina Commissioner of Motor Vehicles, pursuant to N.C.G.S. § 101-105.1. The North Carolina Department of Motor Vehicles forwarded said registered letter to defendant's residence at 1403 Gerard Street, Rockville, Maryland. Said registered letter was returned unclaimed, after attempted delivery from June 2 through June 20, 1980.

6. Default was entered against the defendant on August 11, 1980. Thereafter, during the session of Guilford County

Superior Court beginning June 1, 1981, Robert A. Collier, Jr., Superior Court Judge Presiding, heard the evidence presented by the plaintiff with respect to the injuries he received in the accident and his damages, and entered detailed findings of fact and conclusions based thereon in the judgment dated June 3, 1981.

7. The affidavits and other materials offered by the defendant fail to satisfy the Court that the judgment of June 3, 1981, was entered as a result of mistake, surprise, or excusable neglect, without the negligence or fault of the defendant. The Court is further not satisfied that the defendant has a meritorious defense to this action.

The trial judge made the following conclusions:

1. The defendant has f[a]iled to show mistake, surprise, excusable neglect or any other reason justifying relief from the judgment. . . .

2. The defendant has failed to show a meritorious defense to the plaintiff's action, such as would entitle her to relief from the judgment. . . .

From an order denying her motion, defendant appealed.

*Nichols, Caffrey, Hill, Evans & Murrelle, by R. Thompson Wright for the plaintiff, appellee.*

*Smith, Moore, Smith, Schell & Hunter, by Douglas W. Ey, Jr., for the defendant, appellant.*

HEDRICK, Judge.

Defendant contends it was error for the trial court to deny her motion to set aside the default judgment. Defendant's argument is two-fold: first, that the trial court was required under Rule 60(b) to find as fact certain uncontroverted assertions contained in the affidavits offered in support of the motion and, second, that the facts which the trial court should have found established defendant's right to have the default judgment set aside.

Defendant's argument is apparently offered in support of her position with respect to both subsections of Rule 60(b) under

which her motion was made. While motions made under these subsections, if meritorious, result in the same relief, the difference between them is more that semantic. Rule 60(b)(1) requires that a judgment be set aside when it is shown to the court that the judgment from which relief is prayed was the result of "mistake, inadvertence, surprise, or excusable neglect." N.C. Gen. Stat. § 1A-1, Rule 60(b)(1). Whether the facts justify relief under 60(b)(1) is a matter of law. On the other hand, Rule 60(b)(6) allows a trial court to set a judgment aside for "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6). This provision is equitable in nature and authorizes the trial judge to exercise his discretion in granting or withholding the relief sought. Defendant fails to recognize this distinction. We are thus required to consider her argument as it relates to subsections (1) and (6) of Rule 60(b).

[1] No construction of the evidence given in support of the motion will support a finding or conclusion that the default judgment was entered as a result of "mistake, inadvertence, surprise, or excusable neglect." The defendant did not allege in her motion facts which would entitle her to relief under Rule 60(b)(1). Moreover, since there was no finding of "mistake, inadvertence, surprise, or excusable neglect," the finding with respect to a meritorious defense was mere surplusage, and whether such finding was supported by the evidence is of no legal significance. Thus, the trial court did not err in denying the defendant relief from the judgment pursuant to Rule 60(b)(1).

With respect to motions made under Rule 60(b)(6), the Supreme Court has said, "The broad language of clause (6) 'gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.'" *Brady v. Town of Chapel Hill*, 277 N.C. 720, 723, 178 S.E. 2d 446, 448 (1971) (citation omitted). Rule 60(b)(6) is an equitable provision and motions thereunder are addressed to the discretion of the trial judge. *Id.; Sides v. Reid*, 35 N.C. App. 235, 241 S.E. 2d 110 (1978).

[2] While the trial judge did not make findings of fact with respect to all of the uncontroverted evidence in defendant's several affidavits, he was not required to do so since none of the facts would require him to set the judgment aside as a matter of law although such findings might have justified his exercising his

discretion to set the judgment aside. *Fountain v. Patrick*, 44 N.C. App. 584, 261 S.E. 2d 514 (1980). In any event, the facts found clearly support the trial court's order denying defendant's motion and defendant has failed to show any abuse of discretion in the ruling of the trial judge.

Affirmed.

Judges WHICHARD and BRASWELL concur.

Judge WHICHARD concurring.

Our Supreme Court has indicated that this Court cannot substitute "what it consider[s] to be its own better judgment" for a discretionary ruling of a trial court, and that this Court should not disturb such a ruling unless it "probably amounted to a substantial miscarriage of justice." *Worthington v. Bynum* and *Cogdell v. Bynum*, 305 N.C. 478, 486-87, 290 S.E. 2d 599, 604-05 (1982). It has also stated: "A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E. 2d 58, 63 (1980).

While *Worthington* and *Clark* did not involve discretionary rulings on Rule 60 motions, as does this case, the strictures they impose on appellate review would appear equally applicable to such rulings. Because plaintiff here did all the law required in obtaining constructive service on defendant, and because the damages awarded were not extensive, it is difficult to say that the discretionary refusal to set aside the judgment "probably amounted to a substantial miscarriage of justice" or was "manifestly unsupported by reason." I therefore concur in the foregoing opinion. I file this concurring opinion, however, to express thorough disagreement with the ruling and a belief that the law should impose more exacting prerequisites upon constructive service.

In exercising their discretion as to setting aside entries of default and judgments by default, trial courts should be guided by the principle that default judgments are not favored in the law. Any doubt should therefore be resolved in favor of setting aside such entries and judgments. *Peebles v. Moore*, 48 N.C. App. 497,

504-05, 269 S.E. 2d 694, 698 (1980), *modified and affirmed,* 302 N.C. 351, 275 S.E. 2d 833 (1981). *See Acceptance Corp. v. Samuels,* 11 N.C. App. 504, 510, 181 S.E. 2d 794, 798 (1971).

> [P]rovisions relating to the setting aside of default judgments should be liberally construed so as to give litigants an opportunity to have the case disposed of on the merits to the end that justice be done. Any doubt should be resolved in favor of setting aside defaults so that the merits of the action may be reached.

*Howard v. Williams,* 40 N.C. App. 575, 580, 253 S.E. 2d 571, 573-74 (1979).

Appellate courts are rightfully reluctant to find that trial courts have abused their discretion. "Given the strong policies favoring the resolution of genuine disputes on their merits, however, an abuse of discretion in refusing to set aside a default judgment 'need not be glaring to justify reversal.'" *Jackson v. Beech,* 636 F. 2d 831, 835 (D.C. Cir. 1980).

In affirming an order setting aside a default judgment where service was obtained by publication, this Court recently stated:

> [B]y the time this action was commenced, plaintiff had already negotiated with defendants' insurance carrier acting on behalf of defendants. Evidence tended to show that plaintiff could have easily notified the carrier of her potential civil action and solicited aid in ascertaining defendants' addresses for purposes of service of process. Finally, it appears that plaintiff had available to her the option of requesting defendants' insurance carrier to answer the complaint voluntarily and defend the claim where the defendants could not be located, although there was no duty to do so by either party. There was no attempt to pursue any of these options. Due diligence dictates that plaintiff use all resources reasonably available to her in attempting to locate defendants. Where the information required for proper service of process is within plaintiff's knowledge or, with due diligence, can be ascertained, service of process by publication is not proper.

*Fountain v. Patrick,* 44 N.C. App. 584, 587, 261 S.E. 2d 514, 516 (1980).

A "due diligence" requirement should be equally applicable where, as here, constructive service is obtained through the Commissioner of Motor Vehicles. The fact that the trial court set aside the judgment in *Fountain*, and refused to here, should not be determinative. Absent proof of the due diligence to obtain actual service discussed in *Fountain*, the provision of G.S. 1-105 and -105.1 (Cum. Supp. 1981) that constructive service has the same legal force and validity as personal service should not apply.

G.S. 20-279.21(f)(1) (Cum. Supp. 1981) makes notice to the carrier a prerequisite to using default judgment as a basis for judgment against the carrier where the applicable policy is issued under the assigned risk plan or through the North Carolina Motor Vehicle Reinsurance Facility. This requirement should be one of general applicability.

Proof of due diligence to obtain actual service cannot be found from the record here. There is no evidence that plaintiff made any effort to obtain an accurate address for defendant from defendant's father or her carrier. Defendant's uncontroverted evidence in support of her motion to set aside the judgment is to the contrary. The ease with which defendant was contacted through her father and her carrier once default judgment was obtained indicates a strong probability that she could have been reached through them at the service of process stage.

Here, as in *Fountain*, counsel for plaintiff negotiated with defendant's insurance carrier. They then ceased all contact with the carrier until in a position to demand payment of a default judgment against its insured. Without commenting on the ethics of such dealings, surely the law should require more.

It is at least implicit in finding of fact number seven that the failure to obtain actual service here resulted from the negligence or fault of defendant. Such a finding is unsupported by competent evidence in the record. The notation by the deputy sheriff in Virginia that plaintiff appeared to be avoiding service was incompetent hearsay, and the record contains no competent evidence indicating in any way that defendant was in fact attempting to avoid service. It indicates nothing more than that she was at a very mobile stage of life and living in a very mobile society. The law did not require her immobilization pending expiration of the statute of limitations on plaintiff's potential claim.

To establish a meritorious defense, defendant need only show the possibility that she will prevail at trial. In my view a jury could find from the evidence in this record that when the accident occurred defendant was exercising due care under the circumstances, and thus was not negligent. It also could find that plaintiff was contributorily negligent. The meritorious defense requirement has thus been met.

Since the rationale expressed by this Court in *Fountain* is equally applicable here, the effect of allowing the judgment here to stand, when the one there was set aside, is to deny equal access to the courts and equal justice to litigants. The "due diligence" requirement expressed in *Fountain* thus should be a matter of law, and the setting aside of judgments by default upon constructive service should be mandatory absent a showing of due diligence to obtain actual service. The method by which the judgment here was obtained contains an unconscionable element of ambush which leaves much to be desired in a legal system committed to due process, fair play, equal access to the courts, and equal justice. *See Townsend v. Coach Co.*, 231 N.C. 81, 84, 56 S.E. 2d 39, 41 (1949).

My vote of concurrence is grounded on the stringent strictures on appellate review of discretionary rulings of trial courts, and on plaintiff's compliance with the limited requirements of the extant law on constructive service. It is cast with considerable regret, and with a perception that the result reached reflects an inadequacy in a legal system which aspires to provide equal access to the courts and equal justice to litigants.