An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-930
NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

IN THE MATTER OF:

C.E.C. and C.E.C.
                                    Mecklenburg County
                                    Nos. 11 JT 570,571

Appeal by respondent from order entered 16 May 2013 by Judge Donald R. Cureton in Mecklenburg County District Court. Heard in the Court of Appeals 27 January 2014.

*Senior Associate Attorney Twyla Hollingsworth-Richardson for Mecklenburg County Department of Social Services, Division of Youth and Family Services, petitioner-appellee.*

*Poyner Spruill LLP, by Caroline P. Mackie and Carrie V. McMillan for guardian ad litem.*

*Levine & Stewart, by James E. Tanner, III for mother, respondent-appellant.*

HUNTER, Robert C., Judge.

Respondent mother appeals from the trial court's order terminating her parental rights to C.E.C. ("Carl") and C.E.C.

("Celia").[1] For the reasons discussed herein, we affirm the trial court's order.

## Background

The Mecklenburg County Department of Social Services, Division of Youth and Family Services ("YFS") first became involved with this family in January 2009 after receiving a referral alleging that respondent and Carl tested positive for marijuana at Carl's birth. At that time, services were not recommended and YFS closed the matter in February 2009.

Celia was born in September 2010. In November 2010, YFS received another referral alleging that respondent and the children's father were involved in a domestic violence incident in the children's presence. During its investigation, YFS noted additional concerns, including parenting and substance abuse issues as to respondent, and unstable housing, substance abuse, and possible mental health issues as to the father. In January 2011, the case was transferred to Family Intervention services in order to address these concerns.

On or about 7 March 2011, respondent entered into a case plan wherein she agreed to address issues regarding domestic violence, substance abuse, housing, employment, and to follow

_____

[1] Pseudonyms are used for ease of reading and to protect the privacy of the juveniles.

the recommendations of her mental health provider. Between 30 March 2011 and 6 June 2011, respondent made efforts to meet with her therapist and to address her issues. In May 2011, respondent completed a substance abuse assessment with the McLeod Center and tested positive for marijuana. The McLeod Center recommended intensive outpatient substance abuse treatment, but respondent failed to comply with this recommendation. On or about 6 June 2011, respondent was arrested for failing to appear in court for an assault charge. Respondent placed the children with her cousin, T.W., and the children have remained with T.W. since respondent's arrest. Respondent was in jail until 12 June 2011. After her release from jail, respondent began counseling, but failed to engage in any of the other recommended services.

On 13 October 2011, YFS filed a juvenile petition alleging the children were neglected and dependent. On that same date, YFS obtained nonsecure custody of the children. The children remained in their placement with T.W.

On 8 December 2011, the trial court conducted adjudicatory and dispositional hearings in this matter. The children were adjudicated neglected and dependent. As part of her case plan, respondent was ordered to have a Families in Recovery to Stay

Together ("F.I.R.S.T.") assessment; be assessed for domestic violence and follow any recommendations; have a substance abuse assessment and follow any recommendations; establish and maintain stable housing; establish and maintain employment; participate in parenting classes; visit with the children; and maintain contact with YFS.

The trial court held review hearings on 31 January 2012, 12 April 2012, and 12 July 2012. Respondent had not made progress on her case plan, and at the 12 July review hearing, the trial court ceased reunification efforts.

The trial court held a permanency planning hearing on 31 August 2012, and the trial court ordered YFS to file a petition to terminate parental rights. On 26 October 2012, YFS filed a petition to terminate respondent's parental rights. The hearing was held on 18 April 2013, after which the trial court found grounds existed to terminate respondent's parental rights. The trial court also determined that termination of respondent's parental rights was in the best interests of the children and entered an order terminating her parental rights. Respondent appeals.

**Discussion**

Respondent's sole argument is that the trial court abused its discretion in terminating her parental rights. Respondent contends the trial court's decision to terminate her parental rights was not a reasoned decision because she will continue to have contact with the children due to her familial relationship with T.W.

> After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> > (1) The age of the juvenile.
> >
> > (2) The likelihood of adoption of the juvenile.
> >
> > (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> >
> > (4) The bond between the juvenile and the parent.
> >
> > (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2013). "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are 'manifestly unsupported by reason.'" *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

In this case, the trial court made the following finding with regard to disposition:

> 18. That the juveniles are in the same placement, bonded with their relative placement provider, [T.W.], and they are thriving. The relative provider has consistently met the needs of the juveniles and is supportive. The juveniles are 4 and 2 years old. They have been in the custody since October 2011. Prior to entering custody they had been with [T.W.] and they continue to remain in her care. [T.W.] has provided appropriately for the care of the juveniles ensuring their medical, therapeutic and social needs are met. The juveniles are enrolled in Thompson Child and Development Center. [Celia] is functioning and progressing for a child of her age. Her medical and dental needs continue to be met by [T.W.]. [Carl's] medical and dental needs also continue to be met by [T.W.]. However, he has sensory issues that require him to wear a special vest. Also, [Carl] has speech issues and other issues that cause him to

participate in a special inclusion program at the Thompson Center. His needs are significant enough where he has been given the option to continue to receive services at Thompson's until he is in the 5th grade. Thompson costs about $1,500 monthly for both juveniles. It is in [Carl's] best interest to remain at this facility but there are concerns regarding [T.W.'s] ability to pay for this facility without continued assistance from DSS. There is no information regarding the income of her live-in partner and the other 2 adult children in her home and their ability to assist. [T.W.] and her family have provided a loving, safe and secure environment. The juveniles' basic needs have been met. The permanent plan for the juveniles since July 2012 has been adoption. In order to further that plan, termination of parental rights is required since the mother has not relinquished and opposes her rights being terminated. [T.W.] is willing to adopt but there are concerns regarding her ability to pay for [Carl's] stay at Thompson Center. DSS is working with her to explore options that will assist her in being able to have [Carl] remain at Thompson. With terminating the mother's rights, it is not foreseeable that it will cut her out of the juveniles' life. [T.W.] is a relative; she has allowed the mother to visit the juvenile[s] in her home during the week and on weekends. [T.W.] has not shown any indication that she plans to cut the mother out of the juveniles' lives. Termination of parental rights is necessary to further permanence for the juveniles.

The trial court's finding clearly shows the court considered the factors set forth in N.C.G.S. § 7B-1110. The finding also shows the trial court considered that respondent

would continue to have contact with the children due to her relationship with T.W.  Here, the trial court considered the factors and made a reasoned determination that termination of parental rights was necessary for the children's further permanence.  "'Although severing parental ties is a harsh judicial remedy, the best interests of the children must be considered paramount.'"  *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (2004) (quoting *In re Adcock*, 69 N.C. App. 222, 227, 316 S.E.2d 347, 350 (1984)).  The trial court did not abuse its discretion in terminating respondent's parental rights.  The trial court's order is affirmed.

AFFIRMED.

Judges BRYANT and STEELMAN concur.

Report per Rule 30(e).