An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1019
NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

IN THE MATTER OF:

Mecklenburg County
Nos. 10 JT 305-06

J.R. and J.R.

Appeal by respondent-mother from orders entered 11 April 2012, 15 June 2012, and 14 June 2013 by Judge Regan A. Miller in Mecklenburg County District Court.  Heard in the Court of Appeals 14 April 2014.

> *J. Edward Yeager, Jr., for Mecklenburg County Department of Social Services, Division of Youth and Family Services, petitioner-appellee.*
>
> *Smith Moore Leatherwood LLP, by Carrie A. Hanger and Kip D. Nelson, for guardian ad litem.*
>
> *Mark Hayes for respondent-appellant mother.*

ERVIN, Judge.

Respondent-Mother Latricia D. appeals from the trial court's orders authorizing the Division of Youth and Family Services of the Mecklenburg County Department of Social Services to cease efforts to reunify her with her minor children, J.L.R.

and J.A.R.,[1] and terminating her parental rights in John and James. After careful consideration of Respondent-Mother's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed.

## I. Factual Background

On 12 May 2010, the YFS filed a juvenile petition alleging that John and James were neglected and dependent juveniles. On 14 September 2010, the children were adjudicated neglected and dependent juveniles and continued in YFS custody, with YFS being ordered to make reasonable efforts to reunify the children with Respondent-Mother and with Respondent-Mother being ordered to comply with the provisions of a Family Services Agreement.

After a review hearing held on 2 December 2010, the court found that Respondent-Mother had "made no substantial progress toward reunification" and ordered that the children remain in YFS custody. On 2 February 2011, the court adopted a permanent plan providing for the reunification of John and James with Respondent-Mother and a concurrent plan for the children of guardianship and adoption. The permanent plan for the children remained unchanged until a permanency planning hearing held on

---

[1]J.L.R. and J.A.R. will be referred to as John and James, pseudonyms used for ease of reading and to protect the juveniles' privacy.

14 March 2012, at which point the trial court found that Respondent-Mother had "made little progress" and "has too much to accomplish for the children to be placed with her within six months." By means of an order entered on 11 April 2012, the trial court changed the permanent plan for John and James to adoption and ordered YFS to initiate a termination of parental rights proceeding within 60 days. After a subsequent permanency planning hearing held on 15 June 2012, the trial court authorized the cessation of efforts to reunify Respondent-Mother with John and James.

On 2 May 2012, YFS filed a petition seeking to have Respondent-Mother's parental rights in John and James terminated based upon allegations of neglect, willfully leaving the children in foster care for more than twelve months without making reasonable progress to correct the conditions that led to their removal from the home, willfully failing to pay a reasonable portion of the cost of the care provided for the children, and willfully abandoning the children. At the conclusion of a multi-day evidentiary hearing, the trial court entered an order finding the existence of all of the grounds for termination alleged in the YFS petition, determining that termination of Respondent-Mother's parental rights in John and James would be in their best interests, and terminating

Respondent-Mother's parental rights in the children.[2] Respondent-Mother noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

### A. Cessation of Reunification Efforts

#### 1. Appealability

As an initial matter, we note that, although the trial court explicitly ordered the cessation of efforts to reunify Respondent-Mother with John and James in the 15 June 2012 order, the 11 April 2012 order changing the permanent plan from reunification to adoption and ordering YFS to initiate a proceeding terminating Respondent-Mother's parental rights in the children implicitly authorized the cessation of reunification efforts. *See In re A.P.W.*, __ N.C. App. __, __, 741 S.E.2d 388, 391 (holding that the trial court implicitly authorized the cessation of reunification efforts when it directed the Department of Social Services to petition for the termination of a parent's parental rights and changed the permanent plan to one of adoption), *disc. review denied*, __ N.C. __, 747 S.E.2d 251 (2013). For that reason, the operative order for purposes of our review of the trial court's order is the 11

---

[2]The trial court also terminated the parental rights of the children's father, who has not sought appellate review of that determination.

April 2012 order, in which the trial court implicitly authorized the cessation of efforts to reunify Respondent-Mother with John and James, rather than the 15 June 2012 order, in which the trial court explicitly authorized the cessation of such reunification efforts.

As a result of the fact that her notice of appeal did not challenge any of the trial court's orders other than the order terminating her parental rights in John and James, Respondent-Mother filed a petition seeking the issuance of a writ of *certiorari* allowing for appellate review of the order authorizing the cessation of efforts to reunify Respondent-Mother with the children. Although YFS contends that Respondent-Mother failed to preserve her right to seek appellate review of the order authorizing the cessation of reunification efforts, we conclude that Respondent-Mother has properly preserved her right to challenge the order authorizing the cessation of efforts to reunify her with the children, obviating the necessity for us to consider whether to issue the requested writ of *certiorari.*

"At any hearing at which the court orders that reunification efforts shall cease, the affected parent, guardian, or custodian may give notice to preserve the right to appeal that order in accordance with [N.C. Gen. Stat. §] 7B-

1001." N.C. Gen. Stat. § 7B-507(c). According to N.C. Gen. Stat. § 7B-1001(a)(5)(a):[3]

> a. The Court of Appeals shall review the order to cease reunification together with an appeal of the termination of parental rights order if all of the following apply:
>
> 1. A motion or petition to terminate the parent's rights is heard and granted.
>
> 2. The order terminating parental rights is appealed in a proper and timely manner.
>
> 3. The order to cease reunification is identified as an issue in the record on appeal of the termination of parental rights.

As the record presented for our review in this case reflects, a petition to terminate Respondent-Mother's parental rights in John and James was heard and granted, Respondent-Mother noted an appeal from the trial court's termination order in a timely manner, and Respondent-Mother identified the order authorizing

[3]Effective for actions filed or pending after 1 October 2013, 2013 N.C. Sess. L. c. 129, s. 41, the General Assembly amended N.C. Gen. Stat. § 7B-1001(b) to provide that "notice to preserve the right to appeal [an order authorizing the cessation of reunification efforts] shall be given in writing by a proper party as defined in [N.C. Gen. Stat. §] 7B-1002 and shall be made within 30 days after entry and service of the order in accordance with" N.C. Gen. Stat. § 1A-1, Rule 58. 2013 N.C. Sess. L. c. 129,s. 31. As a result of the fact that the orders at issue in this proceeding were entered well in advance of 1 October 2013, however, the amendment to N.C. Gen. Stat. § 7B-1001(b) worked by 2013 N.C. Sess. L. c. 129, s. 31, does not apply to this case.

the cessation of reunification efforts as one which she wished to challenge before this Court in the record on appeal. As a result, in light of our conclusion that Respondent-Mother has properly preserved her right to challenge the order authorizing the cessation of reunification efforts on appeal, we dismiss her petition for the issuance of a writ of *certiorari* as moot and will proceed to an examination of Respondent-Mother's challenge to the validity of the trial court's decision to end YFS' responsibility for attempting to reunify Respondent-Mother with John and James.

### 2. Sufficiency of Trial Court's Findings

In her brief, Respondent-Mother contends that the trial court erred in the course of authorizing the cessation of efforts to reunify her with John and James on the grounds that the trial court failed to make the findings of fact required by N.C. Gen. Stat. § 7B-507(b). More specifically, Respondent-Mother contends that the trial court's decision to authorize the cessation of reunification efforts should be overturned on appeal on the grounds that the 11 April 2012 and 15 June 2012 orders lack any findings of fact addressing the futility of further efforts to reunify Respondent-Mother with John and James or the consistency of such reunification efforts with the children's health, safety, and need for a permanent home within

a reasonable period of time. We do not find Respondent-Mother's argument persuasive.

The trial court may authorize the cessation of efforts to reunify children with a parent in the event that it makes written findings of fact to the effect that "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1). As the Supreme Court has recently held, however, a trial court's findings of fact "need not recite the statutory language [of N.C. Gen. Stat. §] 7B-507 verbatim," so that the ultimate task faced by an appellate court reviewing a challenge to an order authorizing the cessation of reunification efforts is determining "whether the trial court's findings of fact address the substance of the statutory requirements." *In re L.M.T.*, __ N.C. __, __, 752 S.E.2d 453, 454 (2013).

In this case, the trial court found as a fact in the 11 April 2012 order that Respondent-Mother was "depending on receiving [d]isability to secure what she needs to establish a safe home for the children"; that Respondent-Mother "ha[d] made little progress during this review period"; that Respondent-Mother "must secure housing and stable income"; that Respondent-Mother "was the victim of domestic violence" and "must address

that concern, too"; that "[i]t is not possible for the children to be returned to either parent within six months"; and that Respondent-Mother "has too much to accomplish for the children to be placed with her within six months." In light of these findings, we conclude that the trial court adequately addressed the issues specified in N.C. Gen. Stat. § 7B-507(b), necessitating the further conclusion that, since the trial court did not err by authorizing the cessation of efforts to reunify Respondent-Mother with John and James, its decision to terminate Respondent-Mother's parental rights in John and James was not undermined by the issuance of an invalid order authorizing the cessation of efforts to reunify her with the children.

## B. Termination of Parental Rights

In her second challenge to the trial court's order, Respondent-Mother contends that the trial court erred at the dispositional stage of its termination of parental rights order by finding that John and James did not have a strong bond with Respondent-Mother and determining, on the basis of that and other findings, that adoption was in the children's best interests. More particularly, Respondent-Mother argues that the undisputed record evidence established that John and James loved Respondent-Mother and had a strong bond with her and that the trial court's unsupported finding to the contrary rendered its

determination that termination of Respondent-Mother's parental rights in John and James was in the children's best interests an abuse of discretion. We do not find Respondent-Mother's argument persuasive.

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a). As part of the dispositional process, the trial court must consider the factors enunciated in N.C. Gen. Stat. § 7B-1110(a) and make written findings relating to such of those factors as are relevant to the case under consideration. *Id.* "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are 'manifestly unsupported by reason.'" *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (*quoting Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

In the dispositional portion of its termination order, the trial court found that "[t]he children recognize [Respondent-Mother] as their mother, but do not have a strong bond with [her], as characterized by their need for the therapeutic

support of [their therapist] prior to preparation for an extended visitation over the holiday period of December 2012." In spite of Respondent-Mother's arguments to the contrary, we believe that this finding of fact has adequate evidentiary support. Among other things, the record contains evidence tending to show that John and James had been out of Respondent-Mother's custody for approximately twenty-eight months by the time of the termination hearing. During that twenty-eight month period, Respondent-Mother visited the children nine or ten times. A social worker assisting Respondent-Mother testified that, prior to an extended visit scheduled for December 2012, John and James "were going through some anxiety," so that an additional therapy session for the children was recommended. John and James' foster mother testified that, while the children have a bond with Respondent-Mother, they do not ask when they might be able to return to her home. In addition, the children's therapist testified that the children had been out of Respondent-Mother's care for two years, that John and James are not the same children that they were when they were removed from Respondent-Mother's custody, and that they would need to reconnect with Respondent-Mother in the event that they were returned to her care. Thus, although the record does, as Respondent-Mother notes, contain evidence tending to support a

different determination with respect to the issue of the strength of the children's bond with Respondent-Mother, the challenged finding has more than sufficient evidentiary support. As a result, given that Respondent-Mother's sole challenge to the sufficiency of the evidence to support the trial court's findings of fact lacks merit and the fact that our review of the dispositional portion of the termination order demonstrates that the trial court appropriately considered and made written findings concerning the relevant dispositional factors, we have no basis for overturning the dispositional portion of the trial court's termination order.

### III. Conclusion

Thus, for the reasons set forth above, none of Respondent-Mother's challenges to the trial court's orders have merit. As a result, the trial court's orders authorizing the cessation of efforts to reunify Respondent-Mother with the children and terminating Respondent-Mother's parental rights in the children should be, and hereby are, affirmed.

AFFIRMED.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).