STATE OF NORTH CAROLINA v. GREGORY POWELL ROBERTSON

No. 8110SC1147

(Filed 18 May 1982)

1. **Criminal Law § 146.4— failure to raise constitutional question in lower court**

For an appellant to assert a constitutional or statutory right in the appellate court, the right must have been asserted and the issue raised before the trial court; therefore, where the defendant failed to set forth his reasons for wanting to see notes taken by an officer after the officer's arrest of defendant, upon appeal he could not allege error by the lower court.

2. **Criminal Law § 118— jury instructions on flight of defendant proper**

The trial court did not err in instructing that the State contended "the defendant's failure to appear for his first appearance . . . amounted to his flight from custody and responsibility to the court," since there was some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.

3. **Criminal Law § 112.1— no error in reasonable doubt instructions**

The trial court did not err in failing to instruct the jury that a reasonable doubt could arise from the lack of evidence presented by the State since the State's evidence was amply sufficient to support the verdict.

APPEAL by defendant from *Godwin, Judge.* Judgments entered 3 June 1981, in Superior Court, WAKE County. Heard in the Court of Appeals 6 April 1982.

In August 1980, defendant was arrested under a warrant charging him with breaking and entering and larceny. After being released on his own bond, he failed to appear for his first appearance on 18 August 1980. An order for his arrest was issued on 22 August. On 2 September 1980, defendant was charged in a single indictment, proper in form, with felonious breaking and entering and felonious larceny. On 6 October, a second order for defendant's arrest was issued, alleging that defendant had failed to appear for trial on the two charges, and on 20 October, pursuant to G.S. 15A-932, the State took a dismissal with leave for nonappearance of defendant.

The case was reinstated for trial in March 1981. The State presented evidence tending to show that, on 22 July 1980, the Wakefield apartment of Tony Hartsfield was broken into, and approximately twenty-eight hundred dollars worth of Hartsfield's stereo equipment and televisions had been taken without his consent. According to Gloria Hartsfield's testimony, the equipment was removed during the period between 11:15 a.m. and 1:00 p.m., while she had been on an errand.

Cheryl Hall testified that on that same day defendant and one Vinson Hedgepeth came to the Wakefield apartment she shared with a friend of Hedgepeth. The two men requested that Hall allow them to leave at the apartment a television, two stereo speakers, and some clothing. After bringing the items into the apartment, the defendant and Hedgepeth tested the television to see if it worked. Once they had done this, they put the television in the hot water heater closet, told Hall they would come back later for the equipment, and left. Before they came back, however, Raleigh Police Department Detective Donald Brinson, while searching Hall's apartment with her consent, saw the stereo equipment and television. He later connected these items to the breaking and entering of the Hartsfield's apartment and returned with a warrant for Hall's arrest. The stereo speakers and the television were identified by Tony Hartsfield as the ones taken from his apartment.

The defendant put on evidence tending to show that, between 9:30 and 10:30 on the morning of 22 July, he had gone to the Wakefield apartment of a friend, Deborah Jones, but, finding no one there, had proceeded to the apartment swimming pool. On the way he ran into his cousin Vinson Hedgepeth who led him to some bushes. There Hedgepeth showed defendant "some merchandise," including a television set and some clothes. Hedgepeth and defendant put the items in defendant's car which defendant drove, at Hedgepeth's direction, to the apartment of Cheryl Hall. Defendant was not suspicious about the fact that Hedgepeth had the equipment in the middle of a bush because Hedgepeth had no definite residence and "[a]ll of his belongings and possessions . . . [had] been scattered."

The jury found defendant guilty of both felony charges for which the judge sentenced him to consecutive prison terms. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Robert L. Hillman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for the defendant-appellant.*

VAUGHN, Judge.

During the course of defendant's trial, Detective Brinson was allowed to testify about statements defendant made to him after his arrest. According to Brinson's testimony, he had made "sketchy" notes during the earlier conversation. When defendant requested at trial to see the notes, the State objected and the trial court, observing that Brinson had not used the notes during his testimony, denied the request.

[1] Defendant now argues that the denial of his request to see the notes violated his right to confront witnesses against him, as guaranteed by the sixth amendment to the United States Constitution, made applicable to the states by the fourteenth amendment. Defendant's argument comes too late. Generally, for an appellant to assert a constitutional or statutory right in the appellate court, the right must have been asserted and the issue raised before the trial court. *State v. Jones*, 295 N.C. 345, 245 S.E. 2d 711 (1978). The record discloses that, while defendant requested at trial to see the notes, he did not set forth his reasons for seeing them. The trial court, in denying the request, apparently relied upon the rule set forth in *State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981), that, where a witness does not use or attempt to use the writings sought to be produced, opposing counsel cannot compel their production, even though the writings are under the witness' control. In the present case, the defendant failed to raise the constitutional issue at trial and cannot now allege error by the lower court. In passing, we would point out that, immediately after the denial of his request to see Brinson's notes, the defendant determined that the notes would not have differed from the detective's testimony. Defendant's first assignment of error is overruled.

Next, defendant contends that the trial court erred in admitting, and instructing on, evidence "that defendant exercised his right to remain silent. . .." A review of the record reveals that the portions of evidence to which defendant now takes exception pertained, for the most part, to statements defendant made to

Detective Brinson. Furthermore, the defendant failed to object to the introduction of such evidence and has, therefore, waived his right to argue error now. *State v. Burnette*, 39 N.C. App. 605, 251 S.E. 2d 717, application for further rev. denied, 297 N.C. 302, 254 S.E. 2d 924 (1979); 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973). The trial court's instructions to the jury accurately reflected the evidence of the extent of defendant's conversation with Brinson and did not constitute error.

[2]   As his third assignment of error, defendant contends that the trial court's jury instructions regarding flight of the defendant violated G.S. 15A-1232. Part of the instruction to which defendant excepted was the following paragraph:

> The state contends that the defendant's failure to appear for his first appearance. . . in court on July the 24, 1980, amounted to his flight from custody and responsibility to the court.

Defendant's argument is that there was insufficient evidence to support this statement, that there was conflicting testimony by defendant as to his understanding of when he was to appear and that there was evidence tending to show that Brinson was unable to locate defendant because he was using an erroneous address. In *State v. Irick*, 291 N.C. 480, 494, 231 S.E. 2d 833, 842 (1977), the Supreme Court stated:

> So long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. The fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper.

In view of this and the testimony of Brinson that defendant failed to appear for his first appearance and also failed to meet him the day after defendant's arrest, we find no error in the trial court's instructions.

[3]   Finally, defendant assigns as error the failure of the trial court to instruct the jury that a reasonable doubt could arise from the lack of evidence presented by the State. Defendant relies on *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133 (1954),

where the Supreme Court held that, once the trial judge undertakes to define the term "reasonable doubt" with the expression "a doubt arising out of the evidence in the case" or "growing out of the evidence in the case," he must add "or from the lack or insufficiency of the evidence." The Supreme Court emphasized that whether an error in the reasonable doubt instruction will be considered sufficiently prejudicial to warrant a new trial is determined by the evidence involved. In finding no error, the Court determined in that case that the State's evidence was direct and amply sufficient to support the verdict; that there could not have been any doubt as to the sufficiency of the State's evidence, if believed, to warrant a conviction; and that the only question before the jury was whether to accept the State's version of the facts or the facts as set forth by the defendant.

We believe that, in the instant case, the defendant has failed to show prejudicial error. As in *Hammonds,* the State's evidence was amply sufficient to support the verdict. There was substantial evidence that Hartsfield's apartment was broken into; that stereo equipment and televisions were removed from the apartment; and that the defendant, who was in the apartment complex at all relevant times, had possession of the goods shortly after their removal. The ultimate question before the jury was whether to believe the State's version of the facts or the defendant's evidence that he first saw the stolen items when his cousin showed them to him in some bushes. Obviously, the jury accepted the State's version. Based on this, we fail to find prejudicial error in the trial court's instructions.

In defendant's trial, we find

No error.

Judges MARTIN (Robert M.) and ARNOLD concur.