STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

STATE OF NORTH CAROLINA, ex rel. ENVIRONMENTAL MANAGEMENT
COMMISSION and DEPARTMENT OF NATURAL RESOURCES AND
COMMUNITY DEVELOPMENT, Plaintiff v. HOUSE OF RAEFORD
FARMS, INC., a North Carolina Corporation and NASH JOHNSON AND
SONS' FARMS, INC., a North Carolina Corporation, Defendants

No. 904SC283

(Filed 5 February 1991)

1. **Waters and Watercourses § 3.2 (NCI3d) — water pollution limits — violation of consent judgment and permit — civil penalties — judicial review — failure to exhaust administrative remedies**

    The superior court had no jurisdiction to review civil penalties assessed by the Environmental Management Commission for violations of interim effluent pollution limits set forth in a consent judgment and NPDES permit because defendants failed to exhaust their administrative remedies under N.C.G.S. Ch. 150B. The Environmental Management Commission did not waive the exhaustion requirement as to penalties to be assessed against defendants in the future by signing a consent judgment settling ten enforcement proceedings pending against defendants in the superior court and in the Office of Administrative Hearings where statements in the consent judgment regarding retention of jurisdiction by the superior court referred only to matters in dispute between the parties at the time the consent judgment was entered. Nor was the superior court given jurisdiction over the NPDES permit and any violations thereof because the permit was attached to the consent judgment where it appears that the permit was attached to the judgment only to illustrate the water quality requirements that defendants were to meet. N.C.G.S. §§ 143-215.1(a)(2) and (6).

    **Am Jur 2d, Pollution Control § 492.**

2. **Judgments § 21 (NCI3d) — modification of consent judgment — absence of consent of one party**

    The trial court erred in modifying a consent judgment by substituting a schedule of less stringent interim effluent pollution limits where plaintiff Environmental Management Commission did not consent to the modification, and there was

no evidence in the record that the effluent limits in the original consent order were obtained by fraud or mutual mistake.

**Am Jur 2d, Judgments § 688.**

**3. Judgments § 21 (NCI3d) — modification of consent judgment — change of circumstances not shown**

Defendants' inability to bring their effluent pollution levels under control because of their underestimation of the problems, the weather, and continuing deterioration of defendants' facilities did not constitute a change of condition which, under the terms of a consent judgment, would permit a modification of the provisions of the consent judgment.

**Am Jur 2d, Judgments §§ 717, 765.**

**4. Judgments § 21.2 (NCI3d) — erroneous belief by defendants — unilateral mistake — consent judgment not modifiable**

Defendants' erroneous belief that they could stay within the interim effluent pollution limits required by a consent judgment did not constitute a mutual mistake of fact which would entitle them to a modification of the interim limits.

**Am Jur 2d, Judgments §§ 717, 765.**

**5. Rules of Civil Procedure § 60 (NCI3d) — motion for relief from judgment — amendment of judgment improper**

A judgment may not be amended pursuant to a motion under N.C.G.S. § 1A-1, Rule 60(b)(6) for relief from the judgment.

**Am Jur 2d, Judgments § 679.**

**6. Appeal and Error § 453 (NCI4th) — constitutional questions — necessity for ruling by trial court**

The appellate court will not pass upon the constitutionality of the statutory authority of the Environmental Management Commission to impose civil penalties where this issue was not presented to and passed upon by the trial court.

**Am Jur 2d, Appeal and Error § 574.**

7. **Attorneys at Law § 64 (NCI4th)— attorney fees—prevailing party**

Defendants were not entitled to attorney fees under N.C.G.S. § 6-19.1 where they are not the "prevailing party."

**Am Jur 2d, Damages § 615.**

APPEAL by plaintiffs and defendants from judgment and order entered 1 August 1989 by *Judge D. Marsh McLelland* in DUPLIN County Superior Court. Heard in the Court of Appeals 27 September 1990.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Francis W. Crawley, for plaintiff appellant-appellee.*

*Jordan, Price, Wall, Gray & Jones, by Henry W. Jones, Jr., and Roseanne P. Carter, for defendant appellants-appellees.*

COZORT, Judge.

Plaintiff Environmental Management Commission is the State agency charged with enforcement of State pollution control laws. In 1988 plaintiff and defendants entered into a Consent Judgment in Duplin County Superior Court for the purpose of settling ten enforcement proceedings then pending against defendants in the superior courts of Duplin and Wake Counties and in the Office of Administrative Hearings. The Consent Judgment provided that Duplin County Superior Court retained jurisdiction of that matter for determining motions for further relief based on changed circumstances. Plaintiff subsequently initiated enforcement proceedings against defendants for 48 alleged violations of the interim effluent limitations provided for in the Consent Judgment. The enforcement proceeding included a notification that $294,000.00 in civil penalties would be assessed against defendants for the alleged violations. Defendants sought relief in the Duplin County Superior Court, obtaining a Judgment and Order which, among other things, set aside the proposed assessment of $294,000.00 in civil penalties. On appeal, we find the trial court erred because defendants failed to exhaust administrative remedies provided under the laws of this State.

We begin with a rather detailed summary of the facts and procedural history of this matter, which is necessary for a complete understanding of the issues raised. Defendant House of Raeford

Farms, Inc. (Raeford), and defendant Nash Johnson and Sons' Farms, Inc. (Johnson), which owns 99 percent of the stock of Raeford, are North Carolina corporations which own and operate chicken and turkey hatcheries and chicken slaughtering and processing facilities. Raeford operates a wastewater treatment plant at its Rose Hill Division near Rose Hill, in Duplin County, North Carolina. Raeford's plant consists of two six-acre lagoons in series and a 33-acre spray irrigation field with an underdrain network. The effluent from the underdrain system is collected and discharged into Cabin Branch, which is classified by the Division of Environmental Management as a Class C swamp water in the Cape Fear River basin.

Raeford was issued National Pollutant Discharge Elimination System (NPDES) Permit Number NC 0002178 on 1 August 1986 with an expiration date of 31 December 1987. The State issued other permits to defendant, the sum total of which was to regulate the disposal of waste from the several facilities operated by defendants in Duplin County. The State of North Carolina, through plaintiff Environmental Management Commission (EMC), charged defendants with violations of various water pollution and related laws.

This cause began in the posture of a consolidation of the various cases instituted as a result of alleged violations by the defendants of the pollution control laws.

On 29 February 1988, plaintiff EMC and defendants Raeford and Johnson entered into a Consent Judgment to settle ten cases pending in the superior courts of Duplin and Wake Counties and in the Office of Administrative Hearings. The Consent Judgment required, among other things, that the defendants pay civil money penalties in the amount of $100,000.00 and the sum of $4,520.74 in investigation costs (which amounts were paid in full by the defendants) and that other various civil money penalties charged against the defendants for alleged violations of water pollution laws would be remitted over time in conjunction with the defendants' compliance with a comprehensive construction schedule and monitoring and reporting requirements. Defendants agreed to payment of stipulated penalties for failure to meet certain deadlines and requirements, unless the noncompliance was caused by events or circumstances beyond defendants' control. The Consent Judgment concluded with these two paragraphs:

8. All claims, demands and causes of action of the Plaintiff alleged in, or arising out of, or based on matters set forth

in Plaintiff's Complaint herein shall be merged in this Consent Judgment and completely settled and discharged by such merger.

9. The Court shall retain necessary jurisdiction of this matter for purposes of enforcing the terms of the Consent Judgment; for purposes of determining any matters in dispute; and for purposes of determining any motion for further relief based on changes of circumstances.

On 14 April 1988, defendant Raeford filed a motion in the cause requesting modification of the Consent Judgment. The Consent Judgment required the submission of a final plan for a wastewater treatment and disposal facility by 1 May 1988. Defendant Raeford had discharged an engineer employed to design this facility. Defendant then determined it would be unable to complete the plans by the deadline in the Consent Judgment. The superior court judge presiding over the case, Judge Henry C. Stevens, III, concluded that defendant Raeford had suffered a change in circumstances as set forth in the Consent Judgment. The court then modified the Consent Judgment to allow Raeford a reasonable time to submit a final plan for the wastewater treatment facility.

On 4 May 1989, defendants filed a second motion in the cause. The defendants presented three claims for relief. First, defendant Johnson stated that it "finds it commercially impractical to complete the construction of the previously anticipated improvements to the old chicken hatchery as permitted on 8 March 1988." The Consent Judgment provided that within 30 days of receipt of the permit, Johnson was to begin construction of the authorized improvements. Johnson's change of plans created a conflict with the Consent Judgment. Johnson wanted to be able to use its old hatchery as it was, i.e., without the required improvements, until its new larger hatchery was ready. Defendant asserted that this change in plans was a change in circumstances justifying a modification of the Consent Judgment's requirement that the defendant construct certain improvements on its present chicken hatchery facility.

Also in this second motion in the cause, Raeford contended that it made a mistake in computing the original interim effluent limitations. Raeford asserted that for this reason it experienced a change in circumstances entitling it to relief from the Consent Judgment in the form of a modification amending the interim

effluent limitations established in the attachment to the Consent Judgment.

In the third claim for relief, Raeford sought modification of various filing requirements for the issuance of a nondischarge permit. Raeford claimed that it was unable to submit the additional soil mapping or submit final plans regarding the chicken processing facility as required by the Consent Judgment because the president of Raeford and Johnson had been hospitalized. On 15 May 1989, the defendants modified this claim for relief alleging that on 12 May 1989 they had complied with the submission requirements.

On 18 May 1989, defendants filed a second amendment to their motion in the cause asserting a fourth claim for relief. Through this amendment defendants notified the court that the plaintiff had notified them that defendants were being assessed civil penalties of $294,449.20 for failure to comply with deadlines and requirements set forth in the Consent Judgment. In this second amendment, the defendants asked the court to modify the effluent limitations provided for under the Consent Judgment, apply these modified limitations retroactively and find that the defendants have at all times complied with the effluent limitations, thus removing the justification for the proposed civil penalties. The defendants also asked for attorneys' fees.

The fines to which the defendants objected were assessed by plaintiff in a letter dated 12 May 1989. Plaintiff notified defendant that it was being assessed a penalty of $288,000.00 for 48 violations of N.C. Gen. Stat. § 143-215.1(a)(6) and NPDES Permit No. NC 0002178; $6,000.00 for one violation of N.C. Gen. Stat. § 143-215.1(a)(2) and NPDES Permit No. NC 0002178; and $449.20 for investigation costs. In the notice sent to defendants, the plaintiff informed defendants of three options: (1) pay the penalty; (2) submit a request for mitigation; or (3) submit a request for an administrative hearing. Plaintiff informed defendants they had 60 days to respond.

On 19 May 1989, defendants' motion for amendments to the Consent Judgment was heard in Duplin County Superior Court by Judge Stevens. In an order filed 5 June 1989, the court found that the parties had resolved the issues involved in the first claim for relief. The court determined that it had jurisdiction over the issues and matters in controversy raised by the plaintiff in its 12 May penalty assessment notice to defendants without defendants proceeding through the administrative process pursuant to N.C.

Gen. Stat. § 150B-23 *et seq.*, including jurisdiction over the civil penalties assessed for violations of the terms of the NPDES permit. The court's order set less stringent effluent limits. The court stated: "[T]his interim order is entered in the exercise of the courts [*sic*] equitable jurisdiction . . . the same being an inherent power of the Superior Court to maintain the status quo . . . and specifically to discourage the 'stockpiling' of repetitive litigation." Judge Stevens also recused himself from any further proceedings in the matter and continued the hearing to the 10 July 1989 term of Duplin County Superior Court to be heard by Judge D. Marsh McLelland. (The recusal of Judge Stevens and continuance of the matter are not at issue in this appeal.)

On 3 July, plaintiff filed a motion asking the court to reconsider the 5 June order asking the court to "consider the issue of jurisdiction previously considered by Judge Stevens as the question of subject matter jurisdiction may be raised at any time, and furthermore, that the administrative procedure Act, Chapter 150B, provides the exclusive statutory remedy for contesting the assessment of civil penalties by the Environmental Management Commission and the Director of the Division of Environmental Management."

The matter came on for hearing before Judge McLelland at the 10 July 1989 session of the Duplin County Superior Court. At this hearing plaintiff argued that the court was without jurisdiction to hear defendants' challenge to the propriety of the penalties assessed by the State inasmuch as such matters may be heard in the superior court only on a review of a decision of the Office of Administrative Hearings. The trial court rejected plaintiff's argument, and in an order filed 1 August 1989, the trial court held:

> [T]he election of this forum by the parties through their execution of the Consent Judgment may have precluded Defendants from contesting the propriety of penalty assessments in the Office of Administrative Hearings. If it did not, the granting of its motion to raise retroactively the level of effluent pollution limits would render moot the propriety of penalty assessments, not only in the past but also in the future, thus making first resort to the court the preferable procedure. And since there can be no doubt that the court is a proper forum to conduct hearings, find facts, reach conclusions and render judgments, there is no logical reason to hold that it is limited in cases of this nature to reviewing the hearing, finding of

STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

facts, conclusions and judgment of an administrative agency. For these reasons and to avoid a multiplicity of hearings and forums, Plaintiff's challenge to the jurisdiction of the court to hear all aspects of the Defendants' Motion for Modification is overruled.

After making other findings of fact, the trial court reached the following pertinent conclusions of law:

1. The failure of the Defendants to comply with the limits on effluent pollution set out in the Consent Judgment is not a change of a circumstance that would constitute a basis for relieving Defendants of their obligations under the Consent Judgment. . . .

\* \* \* \*

2. The Defendants' contention that the assessment of civil penalties is unjust because Plaintiff's staff recommended assessment after giving Defendants the impression that it would recommend that no penalties be assessed, and that the court should relieve Defendants in the exercise of its equitable jurisdiction, as authorized by Rule 60(b) (6), Rules of Civil Procedure, N.C.G.S. §1A-1, is without merit.

3. The Defendants' contention that Plaintiff is barred by the Statute of Limitations, N.C.G.S. §1-54, from assessing civil penalties for violations occurring more than one year before the assessment, is without merit.

\* \* \* \*

6. The Defendants' contention that the Plaintiff failed to comply with the law in the determination of civil penalty amounts assessed on 12 May 1989, has merit. N.C.G.S. §143-215.6 (a) (3) provides: "In determining the amount of the penalty the Commission shall consider the degree and extent of harm caused by the violation and the cost of rectifying the damage." There is no other statutory criteria. . . . But [plaintiff's] consideration of the statutory criteria was perfunctory and was given no effect in setting the amounts. Without a basis in law for assessing penalties, there could be no validity to the fixing of amounts on the other criteria set forth in the Rules. Determining the amounts was purely discretionary and largely punitive.

The trial court reversed and set aside the assessed penalties of $294,000.00. The trial court affirmed a $50,000.00 stipulated penalty for failure to file a compliance report. The trial court denied defendants' motion to modify the Consent Judgment and denied defendants' motion for counsel fees.

Plaintiff filed notice of appeal on 22 August 1989; defendants filed notice of appeal on 24 August 1989. Plaintiff assigns as error: (1) the trial court's exercise of jurisdiction over the civil penalties assessed for violations of the interim terms and conditions of the NPDES permit and N.C. Gen. Stat. §§ 143-215.1(a)(2) and (6); (2) the trial court's conclusion that the plaintiff's consideration of the statutory criteria was perfunctory in setting the penalty amounts; (3) the trial court's reversal of plaintiff's assessment of civil penalties of $294,000.00; and (4) the trial court's modification of the interim effluent limits in the Consent Judgment. Defendants assign as error: (1) the trial court's decision not to modify the Consent Judgment to permanently change the effluent limitations; (2) the trial court's refusal to find that the civil penalties assessed against the defendants are unconstitutional; (3) the trial court's conclusion that plaintiff is not barred by the statute of limitations from assessing penalties against defendants; (4) the trial court's conclusion that defendants are liable for the $50,000.00 penalty stipulated in the Consent Judgment and the $449.20 investigation cost; and (5) the trial court's denial of defendants' motion for attorneys' fees. We shall address plaintiff's assignments of error first.

**[1]** Plaintiff contends that the trial court did not have jurisdiction over the penalties assessed by the EMC because jurisdiction is statutorily conferred upon the EMC and the Office of Administrative Hearings. Consequently, plaintiff argues, defendants must exhaust specific administrative remedies before proceeding to the superior court. We agree.

By enacting N.C. Gen. Stat. § 143-215.6, the General Assembly placed subject matter jurisdiction over the assessment and adjudication of civil penalties relating to violations of laws protecting North Carolina's water and air exclusively in the EMC. In § 143-215.5, the General Assembly limited the superior court to judicial review of the final agency action, as provided by N.C. Gen. Stat. § 150B-43, et seq.

Under the statutory scheme, the adjudication of civil penalties assessed under the authority of N.C. Gen. Stat. § 143-215.6 occurs

442 IN THE COURT OF APPEALS

STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

in contested cases. A " 'Contested case' means an administrative proceeding pursuant to this Chapter [Chapter 150B] to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty." N.C. Gen. Stat. § 150B-2(2) (1990). Contested cases are heard before the Office of Administrative Hearings pursuant to § 150B-23, *et seq.*; the authority to make the final decision remains with the EMC. N.C. Gen. Stat. § 150B-36 (1990). It is only after a "final decision" that the superior court has jurisdiction. N.C. Gen. Stat. § 150B-43 states that "[a]ny person who is aggrieved by the *final decision* in a *contested case,* and who *has exhausted all administrative remedies* . . . is entitled to judicial review." (Emphasis added.)

Thus, N.C. Gen. Stat. Chapter 150B provides an effective procedure for defendants Raeford and Johnson to contest the fines assessed by the plaintiff EMC. Our courts have held that "[w]hen the statute under which an administrative board has acted provides an orderly procedure for an appeal to the superior court for review of the board's action, this procedure is the exclusive means for obtaining judicial review." *Snow v. Bd. of Architecture,* 273 N.C. 559, 570-71, 160 S.E.2d 719, 727 (1968); *see also State ex rel. Grimsley v. Buchanan,* 64 N.C. App. 367, 369, 307 S.E.2d 385, 387 (1983). In the case below there was no final order of the Commission requiring defendant to pay a civil monetary penalty. It would become final and subject to collection by civil suit only after all administrative remedies are exhausted. *State ex rel. Lee v. Williams,* 55 N.C. App. 80, 83, 284 S.E.2d 572, 574 (1981).

Defendants contend nevertheless that the superior court had jurisdiction over these fines because the plaintiff, by entering into the Consent Judgment, waived the exhaustion requirement. We hold that by entering into a Consent Judgment which resolved ten cases then pending in the courts and the administrative hearings office, the plaintiff did not waive the exhaustion requirement as to penalties which would be assessed in the future. In the introductory part of the Consent Judgment the parties agreed:

> The State of North Carolina, plaintiff, and House of Raeford Farms, Inc. and Nash Johnson and Sons' Farms, Inc., hereinafter defendants, hereby agree to the entry of this Consent Judgment to amicably resolve this and other matters in controversy

between them and to subject the defendants' operation of the covered facilities to the jurisdiction of the court.

However, in the "Stipulated Findings of Fact" section upon which the Consent Judgment is premised, the parties state:

> The parties agree that this Consent Judgment constitutes full settlement of all matters presently known to them regarding compliance with water quality permits issued by, or water quality laws administered by, the plaintiff Commission and Department, with the following caveat: the plaintiff reserves all rights to otherwise assess appropriate civil penalties pursuant to NCGS 143-215.6(a) in connection with the operation of all of the Rose Hill wastewater treatment facilities by the defendants, including but not limited to any failures to comply with applicable interim or final effluent limitations and monitoring requirements. The parties further agree this Consent Judgment is supplementary to the obligations of the defendant under state and federal water quality statutes.

Furthermore, in the last paragraph of the "Conclusions of Law," the Consent Judgment reads, "The Court shall retain necessary jurisdiction of *this matter* for purposes of enforcing the terms of the Consent Judgment; for purposes of determining any matters in dispute; and for purposes of determining any motion for further relief based on changes of circumstances." (Emphasis added.)

Considering the above language in the context of the entire Consent Judgment, we find that plaintiff did not waive the application of the Administrative Procedure Act to civil penalties which might be assessed subsequent to the execution of the Consent Judgment. We find that all statements regarding retention of jurisdiction refer to the matters in dispute between the parties at the time of entry into the Consent Judgment.

Defendants further contend that since the NPDES permit was attached to the Consent Judgment, the permit became a part of the Consent Judgment, and the trial court was thus given jurisdiction over the permit and any violations thereof. We find nothing in the Consent Judgment which indicates that the parties intended for the trial court to have jurisdiction over the penalties assessed for violations of the permits. The only mention of the attachment is:

> 3. Upon execution of this Consent Judgment, the defendant shall meet, and comply with, all terms and conditions of

NPDES Permit No. NC0002178 except those effluent limitations for $BOD_5$, $NH_3$-N, and Fecal Coliform. *During the time in which this Consent Judgment is effective, the defendants shall comply with the interim effluent limitations and monitoring requirements contained in Attachment A.* (Emphasis added.)

Using the plain language of the Consent Judgment that the parties themselves drafted, it is clear that the NPDES permit was attached to the judgment to illustrate the requirements that the defendants were to meet. No other significance can be attached to the insertion of the permit in the Consent Judgment. The Consent Judgment's unambiguous terms must be given effect until the judgment is modified or set aside. *Peace v. High Point,* 236 N.C. 619, 73 S.E.2d 561 (1952); *see also Ferrell v. N.C. State Hwy. Comm.,* 252 N.C. 830, 115 S.E.2d 34 (1960).

We also find that the Consent Judgment is so detailed that the parties would have specifically provided for waiver of the exhaustion requirement, if they had intended such. *See Spruill v. Nixon,* 238 N.C. 523, 78 S.E.2d 323 (1953). Therefore we hold that the EMC's assessment of penalties was not subject to judicial review because defendants failed to exhaust their administrative remedies. *North Buncombe Ass'n of Concerned Citizens v. Rhodes,* 100 N.C. App. 24, 394 S.E.2d 462, *disc. review denied, appeal dismissed,* 327 N.C. 484, 397 S.E.2d 215 (1990). It follows that the trial court's decision to reverse the $294,000.00 penalty was in error because the trial court lacked jurisdiction over that issue; that portion of the trial court's order is vacated.

[2] We next consider plaintiff's argument that Judge Stevens and Judge McLelland erred in modifying the Consent Judgment during the pendency of the present litigation. We find plaintiff's argument has merit; we hold that plaintiff has been prejudiced by the errors.

In the order of 5 June 1989, Judge Stevens, without consent of plaintiff, modified the Consent Judgment until the 10 July hearing before Judge McLelland by substituting a schedule of less stringent effluent limitations. Judge McLelland continued the substituted effluent limits until the entry of his judgment on 1 August 1989. We can find no basis in law or equity which supports the modification of the Consent Judgment.

The North Carolina Supreme Court has stated the following rule with regard to consent judgments:

A judgment entered by the consent of the parties cannot be changed or altered without the consent of the parties to it or set aside except on proper allegations and proof and a finding by the court that it was obtained by fraud or a mutual mistake or that consent in fact was not given, the burden being on the party attacking the judgment.

*In re Johnson*, 277 N.C. 688, 696, 178 S.E.2d 470, 475 (1971). In the present case, plaintiff did not consent to the substitution of the less stringent effluent limitations. The court made no finding that the effluent limitations in the original consent order were obtained by fraud or mistake; furthermore, there is no evidence in the record that the original limits were obtained by mutual mistake or fraud. Moreover, after the hearing in July, Judge McLelland, in addressing the defendants' request for permanent modification of the effluent limitations, concluded that the failure of a party to perform contractual obligations, even when both parties expect performance, is not a mistake of fact which relieves the nonperforming party of the duty to perform. The court stated:

At bottom, the Defendants' Motion for Modification is an effort to be relieved of compliance with all restrictions on effluent pollution while correcting their inadequate wastewater treatment facilities. Whether the Plaintiff could have so contracted, it is plain that it did not, and it cannot on the facts of this case be compelled to do so.

The order temporarily modifying the Consent Judgment states that jurisdiction "has been properly invoked" in the exercise of the court's equitable jurisdiction "to maintain the status quo." We disagree. The order temporarily lowering the interim effluent limits had the effect of an injunction prohibiting the plaintiff EMC from assessing penalties against defendants for violations of the interim effluent limits set in the Consent Judgment.

The purpose of a preliminary injunction is to "preserve the status quo pending trial on the merits." *State v. Fayetteville Street Christian School*, 299 N.C. 351, 357, 261 S.E.2d 908, 913 (1980). In the present case, the status quo at the time in question was the parties' agreement to abide by the Consent Judgment. Thus, the interim effluent limits set by the Judgment preserved the status quo; the trial court's order modifying the limits altered the status quo. Defendants' remedy is to pursue administrative review of the proposed penalties. Further, the plaintiff was substantially

STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

prejudiced by the trial court's modification, because it was unable to assess penalties for defendants' alleged violations. *See id.* at 358, 261 S.E.2d at 913.

For these reasons, we vacate the portion of the trial court's orders modifying the interim effluent limits.

We now turn to defendants' appeal. Defendants first contend that the trial court erred in failing to modify the Consent Judgment to change the interim effluent limitations. Defendants argue (1) that various conditions causing impossibility of compliance constituted changed circumstances within the meaning of the Consent Judgment; (2) that the parties made a mutual mistake of fact in entering into the Consent Judgment; and (3) that agreements between the parties and the defendants' reliance on plaintiff's representations and actions justify relief from operation of the Consent Judgment pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure. We reject all of defendants' arguments.

As stated above, the general rule is that a consent judgment cannot be modified without the consent of the parties or without proof that consent was obtained by fraud or mistake. *In re Johnson*, 277 N.C. at 696, 178 S.E.2d at 475. Defendants contend nonetheless that a phrase in the Consent Judgment supports modification.

[3] In the last sentence of the Consent Judgment of 29 February 1988 the court retained jurisdiction to enforce the terms of the Judgment and "for purposes of determining any motion for further relief based on changes of circumstances." Plaintiff contends that defendants failed to show changes in circumstances. We agree. After considering the evidence of both parties, Judge McLelland found, in a finding not excepted to by defendants, that "[n]either party presented evidence of specific causation of Defendants' violation of pollutant limits." He then concluded that there was no "change of a circumstance that would constitute a basis for relieving Defendants of their obligations under the Consent Judgment." The trial court's ruling is, in essence, that defendants failed to prove a change in circumstances. Defendants' argument on appeal is that the defendants' inability to effectively bring their effluent limits under control was due to defendants' underestimation of the problems, the weather, and continuing deterioration of defendants' facilities, which all add up to changes in circumstances. We categorically reject this argument and affirm the trial court's holding of no change in circumstances.

STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

[4] Defendants next argue that the parties made a mutual mistake of fact in entering into the Consent Judgment. Mutual mistake is a ground for modification of a consent judgment when the mistake is common to both parties and led to what neither intended. *In re Will of Baity*, 65 N.C. App. 364, 366-67, 309 S.E.2d 515, 517 (1983), *cert. denied*, 311 N.C. 401, 319 S.E.2d 266 (1984).

"A consent judgment signed by the attorneys for the parties is presumed to be valid and the burden of proof is upon the one who challenges its invalidity." *Johnson*, 277 N.C. at 696, 178 S.E.2d at 475. Thus, the defendants must prove that both parties entered into the consent agreement under a mistake of fact. We find no evidence to support defendants' contention.

In *Will of Baity*, the propounders in a will contest argued that the parties' lack of knowledge of a prior will constituted a mutual mistake which would support an order setting aside a Consent Judgment. *Id.* at 367, 309 S.E.2d at 517. This Court held that, even if the existence of a prior will was a material fact, and that the propounders would not have entered into the agreement had they known of the document, "their assumption to the contrary was at most a unilateral mistake." *Id.* at 368, 309 S.E.2d at 518. In the present case, there is no evidence that the defendants' assumption that they could stay within the interim effluent limits was anything more than a unilateral mistake. We hold that the trial court did not err in finding that no mutual mistake of fact entitled defendants to a modification of the interim effluent limitations.

[5] Defendants further maintain that even if this Court finds no mutual mistake of fact, defendants are entitled to relief from the Consent Judgment under N.C. Gen. Stat. § 1A-1, Rule 60(b)(6). Attacks on consent judgments are controlled by Rule 60(b)(6). *In re Will of Baity*, 65 N.C. App. at 367, 309 S.E.2d at 517. Rule 60(b)(6) permits motions for relief from judgments for "[a]ny other reason justifying relief from the operation of the judgment." However, it appears from defendants' brief that their request for relief pursuant to Rule 60(b)(6) is in reality a motion to amend the Consent Judgment. That result cannot be achieved by a motion under Rule 60(b)(6). *Coleman v. Arnette*, 48 N.C. App. 733, 269 S.E.2d 755 (1980). Nevertheless, we shall consider defendants' contention as a request for relief from the Judgment rather than a request for an amendment.

448　　　　　IN THE COURT OF APPEALS

STATE ex rel. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

In *Huggins v. Hallmark Enterprises, Inc.*, 84 N.C. App. 15, 351 S.E.2d 779 (1987), this Court summarized the rules to be employed in reviewing the trial court's decision on a Rule 60(b)(6) motion for relief from a judgment:

> The setting aside of a judgment pursuant to G.S. 1A-1, Rule 60(b)(6) should only take place where (i) extraordinary circumstances exist and (ii) there is a showing that justice demands it. This test is two-pronged, and relief should be forthcoming only where both requisites exist. *Baylor v. Brown*, 46 N.C. App. 664, 266 S.E.2d 9 (1980). In addition to these requirements, the movant must also show that he has a meritorious defense. *Sides v. Reid*, 35 N.C. App. 235, 241 S.E. 2d 110 (1978).
>
> General Statute 1A-1, Rule 60(b)(6) "is equitable in nature and authorizes the trial judge to exercise his discretion in granting or withholding the relief sought." *Kennedy v. Starr*, 62 N.C.App. 182, 186, 302 S.E.2d 497, 499-500, *disc. rev. denied*, 309 N.C. 321, 307 S.E.2d 164 (1983). Our Supreme Court has indicated that this Court cannot substitute "what it consider[s] to be its own better judgment" for a discretionary ruling of a trial court, and that this Court should not disturb a discretionary ruling unless it "probably amounted to a substantial miscarriage of justice." *Worthington v. Bynum*, 305 N.C. 478, 486-87, 290 S.E.2d 599, 604-05 (1982). Further, "[a] judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).

84 N.C. App. at 24-25, 351 S.E.2d at 785.

Applying the foregoing rules to the case at bar, we find that the trial court did not abuse its discretion.

[6] In its fourth assignment of error, defendants contend that the trial court erred in failing to find that the assessment of civil penalties by the EMC violated Article IV, section 3 of the North Carolina Constitution.

Defendants have not complied with Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure which requires a question to be presented first to the trial court by objection or motion. The record on appeal does not reflect that the issue of the constitu-

STATE EX REL. ENVIR. MGMT. COMM. v. HOUSE OF RAEFORD FARMS

[101 N.C. App. 433 (1991)]

tionality of the Commission's civil penalty authority was presented to the trial court. This Court has held that it will not pass upon the constitutionality of a statute where the record does not reveal that the trial court was confronted with the issue and passed upon it. *State v. Robertson*, 57 N.C. App. 294, 291 S.E.2d 302, *disc. review denied, appeal dismissed*, 305 N.C. 763, 292 S.E.2d 16 (1982). Thus, we will not pass upon defendants' fourth assignment of error.

Next, defendants argue that the trial court erred by ruling that the one-year statute of limitations in N.C. Gen. Stat. § 1-54 did not bar the plaintiff from assessing civil penalties for violations occurring more than one year before the assessment. We need not address this issue because we have ruled that the trial court did not have jurisdiction to review the civil penalties assessed by plaintiff. Defendants may raise this argument in their request for an administrative hearing.

Defendants' sixth assignment of error concerns the trial court's upholding the $50,000.00 stipulated penalty and $449.20 in investigation cost assessed by the plaintiff pursuant to the 1988 Consent Judgment. The Consent Judgment provides that specific penalties may be assessed against defendants for failure to meet certain deadlines established in the Consent Judgment. The Consent Judgment requires that defendants file a semi-annual report of compliance status. We have carefully reviewed defendants' argument and the portions of the record pertinent thereto. We find no merit to defendants' contentions and thus affirm this portion of Judge McLelland's judgment and order.

[7] We also summarily reject defendants' contention that defendants are entitled to attorneys' fees under N.C. Gen. Stat. § 6-19.1. Defendants are clearly not the "prevailing party," as contemplated in that statute.

In summary, all temporary modifications of the effluent limitations in the Consent Judgment are vacated, the trial court's reversal of the $294,000.00 civil penalty is vacated, and the remaining portions of the trial court's judgment and order of 1 August 1989 are affirmed.

Affirmed in part; vacated in part.

Judges WELLS and LEWIS concur.