An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-47
NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

LINDA H. MCVICKER,
      Plaintiff,

      v.                                    Wake County
                                            No. 07 CVD 14785
LAWRENCE A. MCVICKER and MVOC,
LLC,
      Defendants.


      Appeal by defendant from orders entered 1 October and 28 October 2013 by Judge Christine Walczyk in Wake County District Court.  Heard in the Court of Appeals 20 May 2014.


      *Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by John W. Narron and Alicia Jurney, for plaintiff-appellee.*

      *Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, K. Edward Greene, and Heidi C. Bloom, for defendant-appellant.*


      HUNTER, Robert C., Judge.


      Defendant-appellant Lawrence McVicker ("defendant")[1] appeals the orders issued 1 October and 28 October 2013 adjudicating him in civil contempt and denying his motion to dismiss plaintiff's motion for order to show cause.  On appeal, defendant argues

      _____

      [1] Although MVOC, LLC was named as a defendant, the consent judgment in arbitration expressly notes that it is not a party to the arbitration nor is it bound by the terms of the judgment.

that the trial court erred by: (1) denying his motion to dismiss the contempt proceeding; (2) holding him in civil contempt; and (3) ordering defendant be held in contempt for amounts allegedly unpaid which were not alleged at the time of the contempt proceeding.

After careful review, we affirm the trial court's orders.

**Background**

Plaintiff-appellee Linda McVicker ("plaintiff") and defendant were married in 1979 and separated in April 2007. After separating, they entered into an agreement providing initial transfers of certain assets to plaintiff and agreeing to submit their claims for alimony and equitable distribution to arbitration. A consent judgment in the arbitration was entered 31 August 2009, which was confirmed by the trial court on 21 September 2009 (the "consent judgment"). The consent judgment provided, among other things, that plaintiff was entitled to a distributive award of $6,242,000, including a 50% membership interest in the business defendant co-owned, MVOC, LLC ("MVOC"). Moreover, the consent judgment required defendant pay plaintiff $11,200 per month until the distributive award is paid in full. Of the monthly payments, 50% would be treated as post-separation support and 50% would constitute as payment towards the

distributive award until plaintiff received $1,500,000 toward the distributive award; at that time, the full payment would count towards the distributive award, and defendant's obligation to pay post-separation support would terminate. The consent judgment provided that the distributive award must be satisfied in full by 30 June 2015. As security for the distributive award, the consent judgment gave plaintiff a valid, perfected security interest in defendant's residence, vehicles, and two bank accounts. Furthermore, the consent judgment also provided that the distributive award "shall also be secured by the following provisions":

> In the event [p]laintiff asserts that [d]efendant has committed an Act of Default with respect to any provision of this Consent Judgment, [p]laintiff may file a Motion for a Charging Order with respect to any distribution that becomes due to [d]efendant from MVOC, LLC. Plaintiff shall afford [d]efendant five days' written notice of the hearing of her Motion for a Charging Order.

On 21 May 2013, plaintiff filed a motion for order to show cause, claiming that defendant had willfully failed to comply with the consent judgment by not making monthly payments towards the distributive award. Specifically, plaintiff contended that defendant had not made a payment since 15 February 2013. The trial court issued an order to appear and show cause on 21 May

2013 after finding probable cause to believe that defendant was in civil or criminal contempt based on his failure to pay plaintiff in accordance with the terms of the consent judgment.

On 20 September 2013, defendant filed a motion to dismiss plaintiff's show cause motion, claiming that: (1) the trial court had no authority to find him in contempt; (2) plaintiff's only available remedy to enforce the consent judgment was to file a charging order against defendant's distributions from MVOC pursuant to the terms of the consent judgment; and (3) defendant does not have the present ability to comply with the consent judgment.

The matter came on for hearing on 26 September 2013. The trial court entered an order adjudicating defendant in civil contempt after finding defendant had sufficient means and ability to comply with the show cause order and ordered a purge amount of $62,572. The purge amount was based on defendant's partial payment in April of $4,298 (which left a balance of $6,572 due to plaintiff) and his failure to make any monthly payments in May, June, July, August, and September 2013. Should defendant fail to pay the purge amount to plaintiff by 30 September 2013, the trial court ordered that defendant be arrested and held until he paid the purge amount. Furthermore,

the trial court denied defendant's motion to dismiss. Defendant appeals.

## Arguments

First, defendant argues that the trial court erred in denying his Rule 12(b)(6) motion to dismiss the show cause order. Specifically, the crux of defendant's argument is that the express terms of the consent judgment only allowed plaintiff to seek a charging order with respect to defendant's distributions from MVOC to enforce the distributive award should defendant default in his obligations under the consent judgment. Consequently, defendant argues that civil contempt was not an available remedy upon default; thus, the trial court should have granted the motion to dismiss the contempt proceeding. In other words, defendant alleges that plaintiff's sole and exclusive remedy for his failure to comply with the distributive award is a charging order, not contempt. We disagree.

The standard of review for a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (citation omitted). "This Court must conduct a

*de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

A court-adopted consent judgment is enforceable by the trial court's contempt power because it is a decree of the court and not simply a contract. *White v. White*, 296 N.C. 661, 665, 252 S.E.2d 698, 701 (1979). Generally, "[t]o hold a defendant in civil contempt, the trial court must find the following: (1) the order remains in force, (2) the purpose of the order may still be served by compliance, (3) the non-compliance was willful, and (4) the non-complying party is able to comply with the order or is able to take reasonable measures to comply." *Shippen v. Shippen*, 204 N.C. App. 188, 190, 693 S.E.2d 240, 243 (2010) (citing N.C. Gen. Stat. § 5A-21 (2009)). Here, defendant does not allege that the trial court failed to find the four requirements under section 5A-21; instead, defendant contends that the express language of the consent judgment provides that plaintiff's only and exclusive remedy if defendant defaults on his monthly payments is a charging order.

Paragraph 18 of the consent judgment provided that: "In order to buy out [p]laintiff's equitable distribution interest in [d]efendant's fifty percent (50%) membership interest in the business MVOC, LLC, [d]efendant shall pay to [p]laintiff . . . a cash distributive award in the amount of Six Million Two Hundred Forty-two thousand dollars ($6,242,000.00)." In paragraph 20, the judgment stated that the distributive award would be secured by defendant's residence, vehicles, and two bank accounts. Finally, in paragraph 21, the consent judgment stated:

> The Distributive Award set forth herein shall also be secured by the following provisions:
>
> . . .
>
> (b) In the event [p]laintiff asserts that [d]efendant has committed an Act of Default with respect to any provision of this Consent Judgment, [p]laintiff may file a Motion for a Charging Order with respect to any distribution that becomes due to [d]efendant from MVOC, LLC. Plaintiff shall afford [d]efendant five days' written notice of the hearing of her Motion for a Charging Order.

Thus, the issue is whether the consent judgment by its own express terms limits enforcement of the distributive award solely to a charging order or whether a charging order is simply one remedy in addition to all other ones available at law.

"A consent judgment is a court-approved contract subject to the rules of contract interpretation. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996); *see also State ex rel. Envtl. Mgmt. Comm'n v. House of Raeford Farms, Inc.*, 101 N.C. App. 433, 444, 400 S.E.2d 107, 114 (1991) (holding that a consent judgment is to be interpreted using its plain language). This Court has noted that

> to interpret the nature and import of the consent judgment more precisely, courts are not bound by the "four corners" of the instrument itself. The agreement, usually reflecting the intricate course of events surrounding the particular litigation, also should be interpreted in the light of the controversy and the purposes intended to be accomplished by it.

*Hemric v. Groce*, 169 N.C. App. 69, 75, 609 S.E.2d 276, 282 (2005). Moreover, our Supreme Court has held that:

> A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect.

*Robbins v. C. W. Myers Trading Post, Inc.*, 253 N.C. 474, 477, 117 S.E.2d 438, 440-41 (1960).

In interpreting the consent judgment, the parties mistakenly focus exclusively on paragraph 21(b), which reads: should defendant default with regard to any provision of the consent judgment, "[p]laintiff *may* file a Motion for a Charging Order with respect to any distribution that becomes due to [d]efendant from MVOC, LLC." Specifically, the parties disagree as to whether the term "may" means that plaintiff must obtain a charging order to enforce the distributive award or if it indicates that a charging order is simply one remedy available to plaintiff. However, the parties' arguments fail to take into account the entire document and construe it as a whole. *See id.* This particular provision, which secures the distributive award, must be construed along with the other provisions that relate to security or collateral for enforcement of the distributive award. As our Supreme Court has noted, by focusing solely on one sentence or even one term in paragraph 21(b), "[t]his conclusion disregards the cardinal principle that a contract must be construed as a whole and not by placing undue emphasis on isolated provisions." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 327, 411 S.E.2d 133, 140 (1991). In other words, to

ascertain the meaning of paragraph 21(b), the Court needs to look at the entire consent judgment and give meaning to all provisions.

In paragraph 20, the consent judgment provides that the distributive award would be secured by a security interest in defendant's residence, vehicles, and two bank accounts. The consent judgment goes on to say that the distributive award "shall also" be secured, in the case of default, by a charging order with respect to defendant's distributions from MVOC. Under defendant's logic, the distributive award could not be enforced by the collateral listed in paragraph 20—in which the consent judgment plainly and unambiguously provided her a security interest; instead, the only remedy available would be a charging order for distributions from MVOC. This interpretation would render superfluous this entire provision of the consent judgment that gave plaintiff security interests in other collateral. Construing the consent judgment in its entirety and giving effect to all provisions, it is clear that a charging order is one option for enforcing the distribution award provisions; however, the consent judgment does not take all other legal remedies away from plaintiff. In fact, it does the opposite by giving plaintiff the option of enforcing her

security interest in other collateral. In addition, it is important to note that the consent judgment specifically states that the distributive award "shall also" be secured by a charging order, indicating that it had provided plaintiff additional enforcement remedies other than a charging order.

Thus, in summary, construing paragraph 21(b) of the consent judgment as a whole with the entire document, the phrase "[p]laintiff may file a Motion for a Charging Order" in the case of default should not be read as limiting enforcement of the distributive award solely to filing a charging order. Instead, that specific provision simply contemplates one type of remedy available but does not mean that a charging order is her sole remedy. Therefore, the trial court did not err in denying defendant's motion to dismiss on this basis.

Next, defendant argues that the trial court erred in finding that he acted willfully. Specifically, defendant contends that the trial court could not find that his noncompliance was willful when he believed that the consent judgment could only be enforced by a charging order. We disagree.

> The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the

> findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.

*Watson v. Watson*, 187 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007). "In order to find that a defendant acted willfully, the court must find not only failure to comply but that the defendant presently possesses the means to comply." *Miller v. Miller*, 153 N.C. App. 40, 50, 568 S.E.2d 914, 920 (2002) (internal citations and quotation marks omitted).

As discussed, construing the consent judgment in its entirety, a charging order was not plaintiff's sole remedy for enforcing the distributive award. Accordingly, defendant's contention that his acts were not willful because plaintiff did not seek a charging order before filing a motion to show cause is without merit. Moreover, with regard to defendant's failure to comply with the consent judgment, he admitted that he had not made the full April payment nor had he made any payment in May, June, July, August, or September. Furthermore, the trial court made numerous findings showing that defendant not only had the means to comply with the consent judgment but that he also spent substantial sums on home improvements instead of making his

monthly payments to plaintiff. Specifically, the trial court found that he spent approximately $29,000 to improve his pool, redesign his kitchen, and purchase draperies. In addition, the trial court noted that defendant made around $10,000 per month and that he had numerous liquid assets that he could have liquidated to make those payments, including two bank accounts—one of which had a balance of approximately $89,000—and several vehicles. These findings are binding because they are all supported by competent evidence, and defendant does not challenge these findings on appeal. *See Tucker v. Tucker*, 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009). Finally, these findings support the conclusion that defendant's noncompliance was willful because they show that defendant not only had the means to comply but that he also purposefully did not comply with the consent judgment. Therefore, defendant's argument is without merit.

Finally, defendant argues that the trial court erred in holding him in civil contempt based on amounts allegedly unpaid which were not alleged at the time of the contempt proceeding. Specifically, defendant contends that the amounts due in June, July, August, and September were not subjects of the contempt

motion or order to show cause, which was filed in May 2013. We disagree.

"Civil contempt or punishment [a]s for contempt is applied to a continuing act, and the proceeding is had to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of such parties." *Rose's Stores, Inc. v. Tarrytown Ctr., Inc.*, 270 N.C. 206, 214, 154 S.E.2d 313, 319 (1967) (internal citations and quotation marks omitted). Here, in plaintiff's motion for order to show cause, she pled that defendant had stopped paying the $11,200 monthly payment as required by the consent judgment. This motion was filed 21 May 2013; however, the hearing on her motion was held on 26 September 2013. At the time of the hearing, defendant had still not made any payments. Since civil contempt is a way in which to require a party to get current on periodic payments, *see Brown v. Brown*, 171 N.C. App. 358, 361, 615 S.E.2d 39, 41 (2005) ("An order for the periodic payments of child support or a child support judgment that provides for periodic payments is enforceable by proceedings for civil contempt."), the trial court had authority to determine which periodic payments defendant had yet to pay at the time of hearing. There is no reason why the trial court could not take

into account the periodic payments defendant missed in the time between the motion being filed and the hearing, a period of four months, given that the express purpose of civil contempt is to protect a party from a "continuing act." *See R*ose's Stores, 270 N.C. at 214, 154 S.E.2d at 319. In this case, some of the "continuing acts" occurred after plaintiff filed her motion in the months before the hearing—specifically, in June, July, August, and September. Furthermore, defendant himself testified that he owed plaintiff $6,572 for April and had not made any monthly payments on the distributive award in May, June, July, August, and September (the month in which the hearing was held). Thus, defendant clearly established that he owed $62,572 to plaintiff, and defendant's argument is without merit.

### Conclusion

Based on the language of the consent judgment and construing all provisions in their entirety, we conclude that a charging order was one, but not the sole, remedy available to plaintiff to enforce the distributive award, and we affirm the trial court's denial of defendant's motion to dismiss on this basis. Furthermore, because there was competent evidence presented at the hearing that defendant's noncompliance was willful, we affirm the order adjudicating him in civil contempt.

Finally, the trial court did not err in holding defendant in contempt for failing to make monthly payments in June, July, August, and September.

AFFIRMED.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).